KATE J. SPRAGUE, ADMINISTRATRIX, *vs.* THE NEW YORK
AND NEW ENGLAND RAILROAD COMPANY.

First Judicial District, Hartford, October Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

Where the correct standard of duty is applied by the trial court in determin-
ing the question of negligence, its conclusion is one of fact and not
reviewable by this court on appeal.

The preparation of a proper time-table and printed rules for the guidance
of employees in the movement of trains, does not necessarily and as
matter of law exhaust the legal duty of a railroad company to exercise
reasonable care in providing for the safety of its servants. Emergen-
cies may arise which call for special orders or additional safeguards,
and the questions whether such an emergency existed in a particular
case, and if so, what action upon the part of the company was de-
manded, are questions of fact for the trial court.

The admission arising from a demurrer or a default, cannot be regarded as
an acknowledgment, or used as evidence, of the defendant's liability
for substantial damages. But when the plaintiff in an action of tort
has proved such damages as a result of the injury complained of, such
proof is *prima facie* sufficient and entitles him to judgment for the sum
found, unless the case so made out is met by counter-evidence offered
by the defendant.

Statements in a finding to the effect that there was no evidence upon cer-
tain matters, are entirely proper, where otherwise inferences unfair to
one of the parties might arise, and where such statements presumably
aid in giving the clearest and most correct presentation of the case as
it appeared upon the trial in the lower court.

[Argued October 8th—decided December 1st, 1896.]

ACTION to recover damages for personal injuries result-
ing in the death of the plaintiff's intestate, brought to the
Superior Court in Hartford County and heard in damages by
the court, *Ralph Wheeler, J.;* facts found and judgment ren-
dered for the plaintiff for $2,000, and appeal by the defend-
ant for alleged errors in the rulings of the court. *No error.*

The case is sufficiently stated in the opinion.

*Edward D. Robbins* and *George A. Kellogg*, for the appel-
lant (defendant).

The court below gave judgment for substantial damages

against the defendant, because he held that " the defendant was guilty of negligence, amounting to a want of reasonable care, in not providing in some way for the special direction of Conrad, under the circumstances disclosed by the evidence." The duty so imposed on the defendant by the court is specifically stated in the sentence preceding that quoted. The court says " the superintendent and train dispatchers did not give Conrad special orders, or proper messages to guide him in the movement of his train from Hawleyville." It is respectfully submitted that in imposing this duty upon the defendant, the court erred. The court erred in holding engineer Heeney to have been free from negligence. All telegraphic orders are sent equally to conductor and to engineer. Each has a time-card, and is equally bound to follow it. Rule 5 of the defendant company, which is printed on the back of the time-card, provides as follows: " Trains on the road are in charge of the conductor; but *engineers are equally responsible* for the observance of running directions." It is respectfully submitted that the court erred in absolving Heeney from the duty of examining and obeying his time-card, which was expressly imposed upon him by the rules of the defendant, and which would be regarded as his most imperative duty under the practice of all railroad companies. It is apparent from the whole finding, and especially from the language of paragraphs 25, 26, and 28, that the court considered the defendant's failure to disprove certain possible facts to be equivalent in its effect to an admission of those facts. This was error. *Nolan* v. *N. Y., N. H. & H. R. R.*, 53 Conn. 475. The question of defendant's negligence is in this case a pure question of law. *Nolan* v. *N. Y., N. H & H. R. R., supra ; Farrell* v. *Waterbury H. R. Co.*, 60 Conn. 248 ; Holmes on the Common Law, 251.

*Charles G. Root*, for the appellee (plaintiff).

If the court has imposed upon the defendant only those duties which the law imposes, the finding of negligence must stand, and the amount of damages, being not excessive for a death, should not be disturbed. *Nolan* v. *N. Y., N. H. &*

*H. R. R.*, 53 Conn. 461, 471 ; *Gerrish* v. *New Haven Ice Co.*, 63 id. 17 ; *Hanks* v. *Boston & Albany R. R.*, 147 Mass. 495 ; *Taylor* v. *Del. & Hudson Canal* Co., 113 Pa. St. 162, 57 Amer. Rep. 446. The defendant was bound to exercise reasonable care to provide for his servants a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work, and fit and competent persons as his co-laborers. *Wilson* v. *Willimantic Linen Co.*, 50 Conn. 433 ; *McElligott* v. *Randolph*, 61 id. 161 ; *Gerrish* v. *New Haven Ice Co., supra.* Unless the master observes this standard he is negligent. *Sullivan* v. *N. Y., N. H. & H. R. R.*, 62 Conn. 217. A master to be exempt from liability to a servant for negligence of co-servants, must himself be free from negligence. *Baltimore & Ohio R. Co.* v. *McKenzie*, 81 Va. 71 ; *Hunn* v. *Michigan Central R. Co.*, 7 L. R. A. 500. It is the duty of the master to supervise, direct and control the operation and management of his business so that no injury shall ensue to his employees through his own carelessness or negligence in carrying it on, or else to furnish some person or persons who will do so, for whom he must stand sponsor. *Hunn* v. *Michigan Central R. Co.*, 78 Mich. 513. "It is the duty of a railroad corporation to prepare a time table and adjust the running of its trains so as to avoid collisions. It must also devise some suitable and safe method by which to run special and irregular trains, and regular trains when off their regular time. That cannot be done by general rules." *Darrigan* v. *N. Y. & N. E. R. R.*, 52 Conn. 306. It nowhere appears in the finding that the court required the defendant to prove anything, or based his conclusions upon the failure of the defendant to prove any particular point.

FENN, J. This is an action by an administratrix to recover damages for an injury which caused the death of the intestate.

The amended complaint alleged that the intestate, Gilbert A. Sprague, was on September 24th, 1891, a brakeman in the employ of the defendant, and was then, lawfully and with due care and in the regular course of his employment, pro-

ceeding on a train operated by the defendant and running from Danbury toward Hawleyville; that on said day while said Sprague was so proceeding on said train, the defendant carelessly and negligently caused and allowed another train to proceed and run from Hawleyville toward Danbury on the same track on which the said Sprague and the train whereon he was, was then proceeding and running, and in a direction opposite to that in which said last mentioned train was running; that a collision occurred, in which said Sprague was crushed and killed; that the said train running from Hawleyville to Danbury, which collided with the train on which said Sprague was, was in charge of one Conrad as conductor, with William Heeney as its engineer—both employed in said capacities by the defendant; that both were incompetent to act in their respective capacities, which was well known to the defendant; that the negligence of the defendant consisted in carelessly and negligently causing and allowing said two trains to collide in the manner stated, and in employing said Conrad as conductor and said Heeney as engineer on said colliding train.

The court upon a hearing after demurrer overruled, assessed full damages and rendered judgment accordingly.

From the detailed and careful finding of the trial court it appears that the injury complained of occurred in the manner and under the circumstances stated in the complaint. The engines of two railroad trains going in different directions on the defendant's single track railroad, collided a little before 8 P. M., September 24th, 1891, at a point between Hawleyville and Danbury near Hobart's siding, about one mile west from Hawleyville and five miles east from Danbury. The intestate was a brakeman on the east bound train, known as No. 700—a first-class freight train. This train was scheduled on the time-card in force at that time, to leave Danbury going east at 7:10 P. M., but left Danbury on that day at about 7:40 P. M., being about thirty minutes behind time. The same train was scheduled to leave Hobart at 7:40 P. M., to arrive at Hawleyville at 7:45 P. M., and to leave Hawleyville at 8:40 P. M.

The train which collided with train No. 700 was known as No. 67, and was a second-class freight train, on its way west from Hartford, scheduled on the time-card to leave Hawleyville at 3:55 P. M. On this day it left Hawleyville at about 7:30 P. M., being nearly four hours behind time. Train No. 67 had been delayed by waiting at stations for the passing of trains—both regular and irregular—which blocked the road. Some of the waiting at stations was upon special orders or messages from train-dispatchers, issued and signed in the name of the superintendent. Train orders or messages from train-dispatchers were frequent, and some of them directed the movements of this train. Some of the delays at stations appear to have been made by the conductor and the engineer in accordance with what they supposed were the rules of the company. Operators on the line kept dispatchers informed of the situation of trains. At Hawleyville messages from dispatchers were received, but it does not appear what they were, and it is not found that there was any special order directing when the train should leave Hawleyville.

Train No. 28, a first-class passenger train, was also scheduled on the time-card to leave Danbury going east at 7:10 P. M., the same time at which No. 700 was scheduled to leave, but was behind time and left at about 7:25 P. M. A message was sent by a train dispatcher to the conductor of train No. 700 at Danbury, substantially as follows: " If no room at Danbury go to Hobarts, ahead of train 28." There was room however, and train No. 700 waited at Danbury till train No. 28 had left. Train No. 67 left Hawleyville upon the arrival there of train No. 28. Whether the fact of the sending of the above message to the conductor of train No. 700 was communicated to the conductor of train No. 67, did not appear from the testimony.

The time-table then in force for the government of employees upon said portion of the defendant's railroad was, as appeared on its face in each upper corner thereof, " Time-table No. 48, to take effect Sunday, September 20th, 1891, at 12 o'clock noon, superseding time-table No. 47, dated

May 10th, 1891." This time-table, No. 48, was made a part of the finding, and it may be said in brief, that, as claimed by the defendant, it appears "so arranged, of such a nature, as to leave as little need as possible for any interference by the train-despatchers." No fault in that respect is, or, we think, could be found. On the face of this time-card in force on September 24th, was printed in large, clear type near the top of the sheet, the following: "For general instructions see other side." On the other side of this time-card were plainly printed the following rules: "Rule 5. Trains on the road are in charge of the conductor; but engineers are equally responsible for the observance of running directions. Rule 26. No train will proceed from one station towards another station, where it expects to meet a train having the right of track, unless it has ample time to arrive there by running at its usual speed. Rule 27. Regular first-class trains have the right to track over all other trains. Rule 30. Second-class trains must be kept ten minutes off the time of regular first-class trains. Rule 35. Whenever time-table time is mentioned in these rules it means leaving time, and all trains will be considered due at the next point, where they are timed, immediately after leaving time at the preceeding station. Rule 36. Trains which are provided for by schedule must not move otherwise than in accordance with schedule rules, except upon a written or telegraphic order, signed by the Division-Superintendent or person authorized by him to sign such orders. Trains which have not schedule rights must not occupy the main track on the time of trains having schedule rights, without a like order, excepting within the yard limits, and in accordance with the rules provided for their government."

E. B. Conrad was employed by defendant as the conductor, and William L. Heeney as the engineer, of train No. 67. At the time of leaving Hawleyville both the conductor and engineer of train No. 67 were on the engine. The engineer, Heeney, asked the conductor, Conrad, to look at the time-card to see what time train No. 700 left Danbury. Conrad

looked at a time-card and answered that there was time enough. Heeney did not look at his time-card.

Conrad had never taken charge of any train on the defendant's road till he took charge of train No. 67, on the day of the collision, and that was the first service he had ever performed for the defendant. Division-Superintendent R. B. Williams employed Conrad as conductor, about ten days prior to the day of the collision—it being his duty as superintendent to employ conductors and engineers on his division—under the following circumstances: About the 1st of September, the month of the collision, Williams wrote several letters to different superintendents, asking them to recommend to him some first-class single track freight conductors. He received a letter from John Babcock, train-master of the New York, Pennsylvania & Ohio Railroad, recommending Conrad as a first-class conductor. Conrad came to Williams also with a letter from Mr. Charles Howard, recommending him as a first-class conductor on a road in Ohio which Howard had operated. Williams gave Conrad some general examination, and gave him a letter to train-master Russ for further examination on time-card and rules. Russ gave him some kind of an examination, but of what character is not stated. The time-card at that time in force was one issued in May, not the one in force on September 24th. Conrad was given ten days to learn the road, and was then ordered to run train No. 67 on September 24th. Conrad had not in fact learned the road when he reported for duty, and engineer Heeney had to attend to certain duties of the conductor as well as his own. He did not know at what time train No. 700 was due to leave Danbury or Hobart. He was unfamiliar with the time-card, if indeed he had the proper one, with the application of the rules of the company, even if he had made any study of them or knew anything about them, and with the defendant's system of management of trains on that day, which was carried on partly by special orders, partly by messages, and partly upon the knowledge and judgment of conductors. He was entirely without any experience in the

position he was in, on the defendant's road, and was in competent to discharge its duties.

Engineer Heeney had been in the employ of the defendant a year as engineer, and for several years earlier as a fireman. Under the system of the company its trains had no regular engineers, an engineer being assigned one day for one train and on another day for another train. Heeney had not run train No. 67 for a month before the day of the collision, and had run the train but few times altogether. He did not know the time at which train No. 700 was due to leave Danbury, and supposed that Conrad's statement was correct. He followed the directions of the conductor, whom the defendant had placed in charge of the train. He was a competent engineer. There was no negligence on his part amounting to a want of ordinary care.

Upon these facts the findings of the court as to the negligence of the defendant, were: " The defendant company knew, or ought to have known, that he (Conrad) was thus incompetent. The superintendent and train-master did not exercise reasonable care in the examination, instruction and preparation of Conrad for his duties. The defendant did not by its superintendent or train-master, or by any officer of the company, or by any provision whatever, exercise reasonable care in placing Conrad in charge of train No. 67, in view of the nature of his duties on that day. The superintendent and train-despatchers did not give Conrad special orders or proper messages to guide him in the movement of his train from Hawleyville, and failed to exercise reasonable care in this regard, in view of Conrad's known inexperience and the condition of business and situation of trains on the road on that day. The defendant was guilty of negligence amounting to a want of reasonable care in not providing, in some way, for the special direction of Conrad under the circumstances disclosed by the evidence. The collision was due to the incompetency of conductor Conrad, and to the negligence and want of reasonable care of the defendant, its superintendent, train-master and despatchers, as above stated."

The nine reasons of appeal assigned by the defendant pre-

sent in effect two questions, and two only, for our consideration: *First*, Can this court, upon the facts stated, review the findings or conclusions of the trial court above recited, in reference to negligence, and find error therein? *Second*, Did the court err, in a hearing in damages upon demurrer overruled, in using the admission of the demurrer as substantive evidence against the defendant, as evidence which must be overcome in order to prevent the plaintiff from recovering full damages?

In reference to the first question: There is and can be no dispute as to the law that a master is bound to exercise reasonable care to provide for his servants a reasonably safe place in which to work, reasonably safe appliances and instrumentalities for his work, and fit and competent persons as his co-laborers. For negligence in the performance of his duty in this respect, the master is liable. Equally so where the injury is produced by the combined negligence of himself and a fellow servant of the injured employee. There is and can be no dispute, also, that this was the rule or standard which the court recognized and sought to apply. The question was: Did the master in these respects exercise, as he was bound to do, such reasonable care, under the circumstances stated? These circumstances were exceptional, peculiar, and such apparently as to call for the application of the often repeated and familiar utterance of this court, "that reasonable care is care proportioned to the danger to be guarded against, and in dangerous situations means great care." We think the record presents an instance of "inferences or conclusions of the court below, based upon the special circumstances of the case, where the only standard of duty is the indefinite and varying one of the conduct of a reasonable and prudent man under like circumstances, where therefore not only the extent of performance but also the measure of duty, must be ascertained as facts." *Dundon et al.* v. *N. Y., N. H. & H. R. R. Co.*, 67 Conn. 266, 269; *Bunnell* v. *Berlin Iron Bridge Co.*, 66 Conn. 24.

But the defendant says in its brief: "It is evident that it would be absurd to leave to a petit jury the question whether

a system of railroad management, in order to be a reasonable and proper system, should permit or provide for special telegraphic orders from train dispatchers, to warn trainmen of facts apparent on the face of the printed time-card." Whether this be true or not, scarcely seems to be a relevant inquiry in the present action. But if it be, the homely adage that "Circumstances alter cases," will apply. More than this, the defendant cites no authority elsewhere in support of the proposition; and certainly it has no sanction from any utterance of this court. On the contrary, in *Darrigan* v. *N. Y. & N. E. R. R. Co.*, 52 Conn. 285, 306, this court said: "The diligence required will be the greater as the dangers and hazards increase. . . . It is the duty of a railroad corporation to prepare a time-table and adjust the running of its trains so as to avoid collisions. It must also devise some suitable and safe method by which to run special and irregular trains, and regular trains when off their regular time. That cannot be done by general rules. Emergencies will arise which no system of rules can anticipate and provide for, in which the company must act, and act promptly and efficiently." Whether the emergencies above spoken of have arisen, and what action is called for in view of such emergencies, is manifestly a question of fact for the trial court; be that tribunal judge or jury, that of course makes no difference. We have repeatedly so held in effect. *Fritts* v. *N. Y. & N. E. R. R. Co.* 62 Conn. 503, 508; *Donovan* v. *Hartford St. R. Co.*, 65 id. 201-214; *Dundon* v. *N. Y., N. H. & H. R. R. Co.*, *supra*; *McAdam* v. *Central Ry. & Electric Co.*, 67 Conn. 445; *Heenan* v. *Bridgport Traction Co.*, ibid. 594. The terse language used by this court in the case last cited, is applicable and decisive here: "These questions were for the determination of the trial court, and its decision is conclusive. There is nothing in the finding . . . to indicate that the trial court imposed . . . a higher degree of duty than the law requires."

But the defendant, as we have seen, contends that the court below erred in this, that, as shown by the finding, it used the admission of the demurrer as substantive evidence against it. The matters in the finding especially relied upon by the

defendant as showing this, are the statements that there was no evidence as to whether the conductor Conrad, who did not appear at the trial, " got so far as to read anything on the card which he had, or indeed whether he was able to read. There is no evidence that the card which Conrad had was the one issued September 20th, or that such card had ever been furnished him, or that he knew of its issue. Conrad is not proved to have been over the road, or any part of it, but once between the time of his employment and his reporting for duty on the 24th of September. He was not placed with any conductor or engineer to learn the road. And it is not proved that he was ever, even for a moment, with any employee on the road, or that he made any effort whatever to learn the road, or to become familiar with the duties of a conductor on the road, or that he was ever informed, until the 24th of September, on what train he would be placed." It is said for the defendant, that it is apparent from this language " that the court considered the defendant's failure to disprove certain possible facts, to be equivalent in its effect to an admission of those facts." In this connection and in support of this claim, the defendant cites certain language of this court from the opinion in the case of *Nolan* v. *N. Y., N. H. & H. R. R. Co.*, 53 Conn. 461, 475 : " It will be observed that the court was careful not to find that the plaintiff proved that the defendant was negligent. Evidently in this state of things the court regarded the admission by the demurrer as entitling the plaintiff to full damages. In other words, the admission was thrown into the scale as evidence, which, we think, was an erroneous use of it." This language is confessedly *obiter*, for the court immediately says, " But this is not of any practical importance in this case." We are glad that it was not, for we confess that, standing alone, the language used admits of a construction which is entirely opposed to the recognized practice of many years, and to the thoroughly established rules relating to such matters in this jurisdiction. Perhaps indeed, the language used is not capable of any other construction. But however this may be, the true rule, as we have held it, has been frequently stated in the reports and

appears, indeed, in another part of the opinion in the very
case to which we have just referred. *Havens* v. *Hartford &
New Haven R. R. Co.*, 28 Conn. 69 ; *Daily* v. *New York &
New Haven R. R. Co.*, 32 id. 356 ; *Lamphear* v. *Buckingham*,
33 id. 237, 250, 251 ; *Daniels* v. *Saybrook*, 34 id. 377, 381 ;
*Carey* v. *Day*, 36 id. 152, 155 ; *Batchelder* v. *Bartholomew*,
44 id. 494, 501 ; *Crane* v. *Eastern Trans. Line*, 48 id. 361;
*Crogan* v. *Schiele*, 53 id. 186 ; *Nolan* v. *New York, New Haven
& H. R. R.*, *supra ; Martin, Admx.*, v. *New York & New
England R. R. Co.*, 62 Conn. 331, 337.

Applying the rule deducible from these decisions to the
present case, it appears to us from a careful reading of the
entire finding of the trial court, in connection with those
extracts from it which we have quoted under this head, that
the position of such court was this : The plaintiff, not con-
tent with nominal damages, to which the action in reference
to the demurrer entitled her without evidence, went forward
with evidence to prove substantial damages. The plaintiff
having then rested, the defendant introduced evidence to
meet the case which the plaintiff had made. For that pur-
pose it offered evidence to show that it was not negligent, and
therefore not liable for these substantial damages, but merely
for nominal damages, and for these only on account of its
admission. The defendant, in the opinion of the trial court,
failed to accomplish this purpose, and the case for substan-
tial damages established upon evidence by the plaintiff, not
having been overthrown by evidence from the defendant,
stood. The defendant appealed, assigning this ruling of the
trial court as a reason therefor. The court, in its finding
upon such appeal—a most careful and detailed statement, as
it appears to us—has stated the facts that did appear in evi-
dence, and on which the defendant relied in support of its
claim. We think that the natural and most reasonable
explanation of such parts of the finding as stated what did
not appear, was to avoid inferences unfair to the plaintiff,
which might otherwise have arisen, and to give the clearest
and most correct possible statement of the case as it was pre-
sented upon the trial. Let us illustrate this : In the court

below the defendant claimed, as it has also done before us, that the rules which appeared on the face of the time-card in force on September 24th—which rules are quoted at length in the finding—"were easy to be understood by any man who had had experience on a railroad, and were proper rules, entirely sufficient if obeyed, to prevent such an accident as this; that the defendant was under no obligation to send a special telegraphic message to those in charge of a train to advise them of facts which plainly appeared on the face of the time-table; that the defendant's duty in regard to the protection of its servants upon train 700, against their co-servants operating train 67, was fulfilled so far as the conductor of train 67 was concerned, by the scheduling for him of train 700 on its time-card in the manner proved at the trial." These matters were relied upon as establishing the claim that the defendant was not chargeable with negligence, and therefore was not liable for the substantial damages proved. They were shown to reduce such substantial and actual damages back again to the nominal point at which the damages stood before the introduction of the plaintiff's evidence. The fact, then, that there was no evidence that the time-table with the rules upon it was ever shown to Conrad, or that he knew of its issue, bore upon the sufficiency of such evidence to accomplish such object. It was material, not because it strengthened the plaintiff's case upon rebuttal by any presumption, but because without such evidence, the defendant failed to establish its own contention in such a way as to call for any rebuttal of it.

The admission arising from a demurrer, or a default, is in no sense to be regarded as an acknowledgment, or used as evidence, or considered as equivalent to evidence, of liability on the part of a defendant for substantial damages; nor, indeed, that there were any such damages suffered, or if so, that they were in any way chargeable to the defendant. What the cases in this jurisdiction have held is, substantially, that when a plaintiff in an action of tort, standing upon default or upon demurrer overruled, has proved actual and substantial damages, resulting to him from the injury com-

plained of, such proof is in the first instance, and *prima facie*, sufficient to indicate that such injury and damage, to the extent proved, is chargeable to the defendant's fault, and that therefore the case made out is one which calls upon the defendant to meet it by counter-evidence, or submit to judgment for the sum proved. We think the trial court acted with this view of the law, and properly.

There is no error.

In this opinion the other judges concurred.