DAYTONA ·BRIDGE COMPANY, A CORPORATION, *Plaintiff in Error,* v. FRANK E. BOND AND J. B. CONRAD, COPART-NERS UNDER THE FIRM NAME AND STYLE OF THE BOND LUMBER COMPANY, *Defendants in Error.*

1. The evidentiary and ordinary bills of exceptions must be made up separate and distinct from each other, and each must be sufficient and complete in itself to review the errors designed · to be presented, and a reference by the appellate court from one to the other is not permissible to aid defects in either.

2. Where the error complained of is based upon an instruction given to the jury, or the refusal to give a requested instruction, it is the duty of the plaintiff in error to have recited in the ordinary bill of exceptions a statement of the evidence, or what the evidence tended to prove, in connection with the instruction given or refused, predicated on such evidence, in compliance with the requirements of special rule 3.

3. In passing upon an assignment of error based upon an instruction given to the jury, or the refusal to give a requested instruction, an appellate court is restricted to the examination of said instruction and the statement accompanying the same, as provided by special rule 3, as said instruction and statement are made to appear in the ordinary bill of exceptions.

4. An account stated must be based upon previous dealings and transactions between the parties, and, while it is not necessary in order to support a count upon an account stated to show the nature of the debt or to prove the specified items constituting

the account, it must appear that at the time of the accounting there have been previous transactions and dealings between the parties of and concerning which an account was stated.

5. The mere failure to object "immediately" or "within a reasonable time" to an account sent by mail to one who has never had any dealings with the sender will not render the account so sent an account stated so as to authorize a recovery upon it.

6. A party to whom an account has been sent is given by the law a reasonable time in which to examine and object to the same, and what is a reasonable time within which the person to whom an account is rendered must object or become bound depends upon the relation of the parties and the usual course of business between them. The question of what is a reasonable time within which the party must object in such cases is one of law for the court to determine in every case, dependent, however, upon the facts proved, the latter to be passed upon by the jury.

7. A stated account never gives to one claiming under it the benefit of an absolute estoppel. It establishes *prima facie* the correctness of the items and of the liability of the party therefor, and, unless the presumption is overcome by proof of fraud, mistake or error, it becomes conclusive; but that an account may be impeached for fraud, mistake or error is well settled. The party impeaching it, however, has the affirmative of the issue and the burden of proof.

8. Where the presentation of an account is by mail the person sought to be charged must in terms be a party to the account or the grounds upon which it' is sought to hold him as a debtor should be clearly made known to him and a demand for payment made, otherwise no presumption arises from his silence in relation thereto.

9. Where the statement of facts accompanying an instruction, and upon which such instruction was predicated, fails to show any promise of the defendant, either through its general manager or otherwise, to pay the indebtedness claimed, provided an extension of time was given, but, on the contrary, said statement shows that plaintiffs were apprised by the general manager of defendant that its directors would have to act in the matter, said statement simply containing a strong expression of opinion by such general manager that the directors would pay said indebtedness, an instruction to the jury based upon a promise of the defendant to pay said indebtedness in consideration of

an extension of time is erroneous, being liable to confuse and mislead the jury.

10. The mere fact that a verbal agreement to answer for the debt, default or miscarriage of another is an absolute promise to pay the debt, and that it is supported by a new consideration, does not necessarily take it out of the statute of frauds.

11. Errors not argued will be treated as abandoned.

This case was decided by the court *En Banc*.

Writ of error to the Circuit Court for Volusia county.

The facts in the case are stated in the opinion of the court.

*Davis & Hilburn* for plaintiff in error.

*George M. Robbins* for defendants in error.

SHACKLEFORD, J.—The defendants in error, Frank E. Bond and J. B. Conrad, as co-partners under the firm name of the Bond Lumber Company, brought an action of assumpsit in the Circuit Court of Volusia county against the plaintiff in error, the Daytona Bridge Company, a corporation, in the year 1901, and recovered judgment for the sum of $321.13, damages, and $26.03, costs, on the 17th day of April, 1902, which judgment plaintiff in error seeks to have reversed by writ of error.

Omitting formal parts the declaration in the case was as follows: "Frank E. Bond and J. B. Conrad, co-partners under the firm name and style of the Bond Lumber Company, by George M. Robbins, their attorney, sue the Daytona Bridge Company, a corporation under the laws of Florida, for money payable by the defendant to the plaintiffs for goods bargained and sold by the plaintiffs to the defendant.

(2) And for work done and materials furnished by the plaintiffs to the defendant.

(3) And for money found to be due from the defendant to the plaintiffs in account stated between them.

(4) And for interest at the rate of 8 per cent. per annum upon the sum of $233.84 due by the defendant to the plaintiffs since the 14th day of August, 1897.

And plaintiffs claim $500.00."

The following statement was attached to the declaration as a copy of the cause of action, the same being a full and exact copy of said statement as the same appears in the record proper:

"Copy of Account sued on.

| 1897. | | | | | | | $ | $ |
|---|---|---|---|---|---|---|---|---|
| April 20th—10 pcs. 6 x 8— 7 R. | | | 280 ft.......... | | | | 3.92 | |
| | | | | | Del.......... | | 28 | 4.20 |
| May 12th—12 pcs. 4 x 4—24 R. | | | 384 ft.......... | | | | 4.99 | |
| | | | | | 600)........ | | 7.20 | |
| | 1400 ft. 1 x 8—10 R. No. 2 d. d. 800).. | | | | | | 10.40 | |
| | | | | | | Del.. | 1.75 | 24.34 |
| May 20th—22 bbls. Anchor Brand Cement.) | | | | | | | | |
| | 14 | " | Globe | " | " | .......117.00 | | 117.00 |
| May 22nd—(10 | " | Anchor | " | " | ....... | | | |
| | (2 | " | Globe | " | " | ....... | | 39.00 |
| May 29th— 8 | " | Dore | " | " | )....... | | 22.40 | |
| | 4 | " | Globe | " | " | )....... | | 12.00 | 34.40 |
| June 12th— 9 | " | Rosendale | Cement | | ........ | | 14.00 | |
| | ½ | " | Globe | " | | ........ | | 1.50 | |
| | 2 | " | Maley's | " | | ........ | | 3.60 | 19.10 |
| | | | | | | | | 238.04 |
| Aug. 14th—By cash........................... | | | | | | | | 4.20 |

Interest at 8 per cent. per annum from
Aug 14th, 1887..................          233.84"

The defendant pleaded that it never was indebted as alleged, upon which issue was joined and the case submitted to a jury.

The first error assigned is that "the court erred in charging or instructing the jury as requested by the plaintiffs' attorney," but, as this assignment is not argued, it

must be treated as abandoned. *Hoodless v. Jernigan,* 46 Fla. 213, 35 South. Rep. —, and authorities there cited.

The second error assigned is based upon the following instruction given by the court to the jury, at the request of plaintiffs: "If you believe from the evidence that statements were sent to the defendant on or about the end of each month during which the material was being supplied, charging the defendant with the price of the material so supplied, and the defendant received the statements and did not immediately on receipt thereof, inform the plaintiffs that it was not the purchaser thereof, then such conduct amounts in law to an admission that defendant was the purchaser, and to an implied promise to pay for it." The ordinary bill of exceptions contains a statement that "the said charge was predicated upon the following state of facts, or facts that the testimony tended to prove:

The witness, H. C. Morris, testified that he sent out monthly statements of the account sued upon to the defendant, and also rendered statements to the defendant as long as material was sent out, which statements the witness said were sent by mail about the 1st of May, June and July, 1897, addressed to the Daytona Bridge Co., Daytona, Fla., its place of business, and were never returned to the Bond Lumber Company, although there were return requests on the envelopes; that the defendant never spoke to the witness about the matter until he sent out a statement in the month of August, 1897, when the general manager of the defendant called upon him and disclaimed all liability and said one T. White had a contract to do this work and that he had not previously known of the plaintiffs' claim to hold the defendant responsible.

Defendant's witnesses, A. C. Corp and M. Garland, testified that they only received one (1) statement, which was a complete and fully itemized statement, and which was received in August, 1897. The witness, H. C. Morris, testified that he had never made any personal request of the defendant, or any of its officers, to pay said bill, but had

sent out statements by mail. Witness Corp admitted that there were other officers of the Daytona Bridge Company, but said he received and attended to the mail."

The third error assigned is based upon the giving of the following instruction to the ·jury, at the request of plaintiffs' counsel: "If you believe from the evidence that a statement of the material supplied by plaintiffs for defendant's bridge in May, 1897, was sent to and received by defendant on or about June 1st, 1897, and defendant did not within a reasonable time object to plaintiffs, to said statement, or question its correctness, then the account became a stated account, and plaintiffs are entitled to recover on the count in the declaration of 'account stated.' And the same is true as to the material supplied in June, 1897, if you believe from the evidence that a bill for these items was rendered defendant on or about July 1st, and not objected to within a reasonable time. You are the judges under the evidence of what would have been a reasonable time to object." The following state of facts, or facts that the testimony tended to prove, upon which said instruction was predicated, is set forth in the ordinary bill of exceptions, to which bill, as we shall see, we are confined in considering said assignment.

"The witness, H. C. Morris, testified that he sent out monthly statements of the account sued upon to the defendant addressed 'Daytona Bridge Company, Daytona, Fla.,' its place of business, and also rendered statements to the defendant addressed as above, at the end of each month as long as material was sent out, which statements the witness said were sent by mail, and were never returned to the Bond Lumber Company, although there were return requests on the envelopes, and that the defendant never spoke to the witness about the matter until he sent out a statement in the middle of August, 1897, when the general manager of the defendant called upon him and disclaimed all liability, and said the work had been done under a contract by one T. White, and he did not know previously of the intention

of the plaintiffs to claim that defendant was responsible. Defendant's witnesses testified that they only received one statement which was a complete and fully itemized statement, and which was received in August, 1897. Admitted that there were other officers of defendant company besides Corp, but said Corp received and attended to all mail matter. The witness, H. C. Morris, testified that he had never made any personal request of the defendant, or any of its officers, to pay said bill, but had sent out statements by mail about the first of May, June and July, 1897."

In the consideration of these assignments it must be borne in mind, as was said by this court in *Allen v. Lewis*, 38 Fla. 115, 20 South. Rep. 821, that "the evidentiary and ordinary bills of exception must be made up separate and distinct from each other, and each must be sufficient and complete in itself to review the errors designed to be presented and a reference from one to the other is not permissible," and, as was said in *Hoodless v. Jernigan, supra*, in speaking of the ordinary and evidentiary bills of exceptions, "A reference by the court from one to the other is not permissible to aid defects in either." Also see the 10th headnote in *Hoodless v. Jernigan, supra*, to the effect that "Where the error complained of is based upon an instruction given to the jury or the refusal to give a requested instruction, then the plaintiff in error should have recited in the ordinary bill of exceptions a statement of the evidence, or what the evidence tended to prove, in connection with the instruction given or refused, predicated on such evidence, in compliance with the requirements of Special Rule 3." Also see *Jacksonville St. R. Co. v. Walton,* 42 Fla. 54, 28 South. Rep. 59. We are restricted, then, to the statements of the evidence in the ordinary bill of exceptions accompanying said instructions upon which they must be held to have been predicated.

The instruction complained of in the third assignment purports on its face to be applicable only to the count in the declaration upon "account stated," and, from the ac-

companying statement of facts, it appears that the instruction complained of in the second assignment was applicable to the same count. Do the statements of fact show that these instructions were authorized? We think not. An account stated must be based upon previous dealings and transactions between the parties, and while it is not necessary in order to support a count upon account stated to show the nature of the original debt or to prove the specific items constituting the account (*Jacksonville, M. P. Ry. & Nav. Co. v. Warriner,* 35 Fla. 197, 16 South. Rep. 898), it must appear that at the time of the accounting there had been previous transactions and dealings between the parties of and concerning which an account was stated. 2 Chitty on Contracts, pp. 961, 962; 2 Greenleaf on Ev., sec. 126; Abbott's Trial Evidence, 563; *Stevens v. Tuller,* 4 Mich. 387; *Toms v. Sills,* 29 U. C. Q. B. 497; *Truman v. Owens,* 17 Oregon 523, 21 Pac. Rep. 665; *Powers v. New England Fire Ins. Co.,* 68 Vt. 390, 35 Atl. Rep. 331; *Zacarino v. Pallotti,* 49 Conn. 36. See, also, *Field v. Knapp,* 108 N. Y. 87, 14 N. E. Rep. 829; *Kellogg v. Rowland,* 40 App. Div. (N. Y.) 416.

It will be observed that there is no suggestion in the statements of fact that plaintiff sold or claimed to have sold the defendant the items, or any of them, mentioned in the accounts rendered, or that there had ever been any transactions or dealings between the parties, nor does it appear that defendant ever expressly acknowledged the correctness of the account or any part of it, nor is any other fact shown from which the jury could infer that there had ever been any dealings between the parties which is the essential basis of an account stated. The mere failure to object "immediately" or "within a reasonable time" to an account sent by mail to one who has never had any dealings with the sender, will not render the account so sent an account stated so as to authorize a recovery upon it.

There are other defects in respect to these charges, considered as charges upon account stated. We shall

simply point out those defects in order that they may be corrected upon another trial, without determining whether they are shown to be of sufficient importance to reverse the present judgment. One of the charges requires the party sought to be charged by the account stated to object immediately on receipt of same, whereas the law gives him a reasonable time in which to object. The other submits to the jury the question as to what constitutes reasonable time to object, whereas that is a question of law for the court. Neither charge informs the jury that an account which has become a stated account by having been rendered to and received by one who made no objection thereto within a reasonable time, is only *prima facie* evidence of the correctness of the items and of the liability of the party therefor, which may be repelled and overcome by the party sought to be charged upon it. Each of these propositions is well settled in this State as well as elsewhere. *Martyn v. Amold,* 36 Fla. 446, 18 South. Rep. 791. See, also, *Withers v. Sandlin,* 44 Fla. 253, 32 South. Rep. 829.

The statements of fact predicated under these charges do not show clearly and definitely that the statements of account sent the defendant purported to charge it as the debtor thereon, nor that there accompanied such statements any demand upon the defendant to pay them. It is shown that statements of the account "sued upon" were rendered, but the account "sued upon" does not upon its face purport to charge the defendant for the items mentioned therein. Where the presentation of an account is by mail the person sought to be charged must in terms be a party to the account, or the grounds upon which it is sought to hold him as a debtor should be clearly made known to him and a demand for payment made, otherwise no presumption arises from his silence in relation thereto. *Benites v. Hampton,* 3 Utah 369, 3 Pac. Rep. 206; see, also, *Coffee v. Williams,* 103 Cal. 550, 37 Pac. Rep. 504.

The fourth error assigned is based upon the giving of the following instruction to the jury, at the request of

plaintiffs: "If you believe from evidence that the local manager of the bridge company promised the plaintiffs that if it would wait until the fall of 1897, until the directors should return, the bill would be paid, and defendant relying upon said promise did wait, the extension of time by the plaintiffs is a good consideration for the promise to pay in the fall, and you should find for the plaintiffs."

This instruction was predicated upon the following facts that the testimony tended to prove, and is set forth in the ordinary bill of exceptions:

"The witness, H. C. Morris, testified that in August, 1897, Mr. A. C. Corp, general manager of the defendant, called upon him in response to a statement of account sent out by him to the Daytona Bridge Company, and that the witness informed said Corp that he was going to put a lien on the defendant's bridge for material furnished, and the witness further stated that said Mr. Corp promised him that if he would wait until the fall of 1897, until the directors should return from the North, that he would call a meeting of the directors and to get them to adjust the matter and the bill would undoubtedly be paid, and the said witness, H. C. Morris, also testified that no lien was taken after that. These matters, however, were denied by said Mr. A. C. Corp in his evidence, except that no lien was taken."

We are of the opinion that this instruction is also erroneous. We fail to find in the statement of facts upon which it was predicated any promise of the defendant, either through its general manager or otherwise, to pay said indebtedness, provided an extension of the time was granted. On the contrary, said statement shows that plaintiffs were apprised by the general manager of defendant that its *directors* would have to act in the matter. Even if it were shown that though the debt was contracted by another, facts existed upon which defendant could be held liable upon a verbal promise to pay it, as to which see *West, Wiggs & Co. v. Grainger*, 46 Fla. 257, 35 South. Rep. 91,

and other Florida cases there cited, the statement of facts here predicated does not show a promise to pay, either on the part of the general manager or of the directors, but merely that the general manager would call a meeting of the directors and have them adjust the matter, and a strong expression of opinion by the general manager that the directors would pay it.

The fifth and last error assigned is based upon the overruling of the defendant's motion for a new trial. In disposing of the other errors assigned we have already considered all the grounds of said motion except those based upon the fact that the verdict was contrary to the law and contrary to the evidence. As the judgment will have to be reversed for the errors already found, we do not deem it either necessary or advisable for us to express any opinion concerning those grounds.

It follows that the judgment must be reversed and a new trial awarded, and it is so ordered, at the cost of the defendants in error.

HOCKER, COCKRELL, WHITFIELD and CARTER, JJ., concur.

TAYLOR, C. J., absent on account of sickness.