GENERAL PETROLEUM PRODUCTS, INCORPORATED, *vs.* THE MERCHANTS TRUST COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued March 4th—decided May 10th, 1932.

*J. Warren Upson,* for the appellant (plaintiff).

*Herman J. Weisman* and *William W. Gager,* for the appellee (defendant).

HINMAN, J. The complaint alleged that from June 6th, 1927, to January 29th, 1929, the plaintiff made deposits amounting to $20,820.69 in the defendant bank and that it had drawn no checks upon this fund, the claim as developed on the trial being that checks charged by the defendant to that amount were forged. The defendant in its answer admitted the deposits but denied that no checks had been drawn against them, and interposed two special defenses alleging that the checks in question were presented to the defendant in regular course of business and charged to the plaintiff's checking account; that it delivered to the plaintiff monthly statements of its account and all canceled checks charged therein; that the plaintiff did not make any complaint that the accounts were incorrect or that any of the checks were not duly signed by the plaintiff until in February, 1929, complaint was made of certain items appearing on the statement of that month; and that the plaintiff by reason of such failure to object to the accounts or notify the defendant of claimed errors therein was estopped to deny the correctness thereof, and by failure to question the validity of any of the signatures of the drawer of the checks led the defendant to believe that the signatures were duly authorized, and was estopped to deny the validity of the checks. The trial court held that fourteen checks amounting to $3440.28, which were introduced in evidence, were forged and improperly charged to the plaintiff's account, that the defendant was negligent in failing to detect the forgeries so that as to these the estoppel claimed under the special defenses did not arise, and rendered judgment for the amount thereof with in-

terest. As to the remainder of the questioned checks, which were not produced in evidence, it was held that the evidence was insufficient to overcome the prima facie showing made by the bank records.

The plaintiff corporation was organized in 1922 under the name of the Liberty Oil Company, but in May, 1929, its name was changed to General Petroleum Products, Inc. It is located in Waterbury and engaged in the sale of gasoline and oils. Previous to June 6th, 1927, the plaintiff opened a commercial checking account with the defendant and continued it during the period here involved. Morris Spirt was treasurer and S. Burton Spirt secretary of the plaintiff company, and these two officers were authorized to issue checks against the account. In July, 1926, Josephine McGroary was employed by the plaintiff as bookkeeper and thereafter had charge of all the books of account including check books, made out checks for signature by the treasurer or secretary, prepared the deposits and deposit slips and sometimes made the deposits. It was the custom of the defendant to return the paid checks of the plaintiff at least once a month accompanied by statements of the condition of the account as reflected by the records of the bank, and when the statements were received by either of the Spirts they were delivered to Miss McGroary for filing and checking. S. Burton Spirt occasionally made comparison between the checks shown upon the bank statement as being drawn against the account and the canceled checks.

Between June 6th, 1927, and February, 1929, many deposits were made by the plaintiff and a large number of checks were drawn by the duly authorized officers of the plaintiff company. In February, 1929, the plaintiff discovered that certain checks had been forged and upon search of Miss McGroary's apartment there

were found some of the fourteen forged checks, the bank statements bearing date after July 1st, 1928, certain sheets of stubs from the plaintiff's check book, also bank pass-books in the name of Miss McGroary, checks drawn by her upon these accounts, and bank statements relating thereto. Subsequently, copies of the original bank statements of the plaintiff's account were obtained and comparison was made by an accountant between these and the duplicate statements rendered to and in the possession of the plaintiff, the stubs of the plaintiff's check books, and its cash book. The bank accounts of Miss McGroary were also examined.

The results of this comparison as set forth in the finding show, as to the statements of account between May, 1927, and August, 1928, discrepancies between the bank's account and the statements in the possession of the plaintiff in that withdrawals charged to the plaintiff on the bank's account do not appear on the statements, check stubs, or the plaintiff's books, the items covering such charges apparently having been erased in most instances from the plaintiff's statements. In some cases the opening and closing balances shown by the account were compensated by a reduction on the statement in the total deposits for the period covered by the statement, either by erasure or alteration of deposit items; in others there is a difference, apparently through alteration of figures, between the opening or closing balance or both, appearing on the statement, and those shown by the bank's account. In many instances, inspection of bank statements, pass-books, and deposit slips pertaining to accounts carried by Miss McGroary in other banks revealed a deposit, to her credit, of a check on the defendant bank corresponding in amount and approximately in date with an item of disbursement

from the plaintiff's deposits appearing in the bank's accounts but absent from the plaintiff's statement. In the statements from July 25th, 1928, to February, 1929, covering the period during which the checks found by the court to have been forged were drawn, the opening and closing balances and total of deposits and disbursements coincide with the bank's account, except in one instance which did not involve disbursement for which checks were produced in evidence.

As to each of the withdrawals above mentioned as shown on the bank's account but not on the statement when introduced or in the plaintiff's books, but where no check corresponding thereto in date and in amount was produced, the trial court found that "it does not appear in evidence that the withdrawal . . . was an improper charge made by the defendant against the plaintiff's account." This appeal seeks to eliminate each and all of these findings and to substitute therefor statements that the withdrawal was paid by the defendant upon a check upon which the signature of the maker, the plaintiff, was forged by Miss McGroary; that she had no authority to sign the plaintiff's name to a check or present it for payment to the bank; that the withdrawal was unauthorized by the plaintiff or any of its executive officers and was an improper charge made by the defendant against the plaintiff's account. We construe the findings which are sought to be stricken out as summarily stating, as to the item of withdrawal to which each pertains, the case relating thereto as presented upon the trial, and similar in purport to the general statement as to all such withdrawals contained in the memorandum of decision, which is made part of the finding, as follows: "There was no evidence . . . from which the court can find that the withdrawals . . . were in fact forgeries to the extent at least of embodying unauthorized

signatures. The books of the plaintiff were admittedly incomplete, and in some cases were inaccurate. An examination of the testimony of S. Burton Spirt and Morris Spirt discloses a significant lack of assertion that any but the checks offered in evidence as forgeries were, in fact, unauthorized withdrawals from their account. With the evidence in this condition it is impossible for the court to find that the prima facie showing made by the bank's records of withdrawals has been overcome, except in reference to the above mentioned exhibits" (the checks in evidence and found to be forgeries). The same situation is reflected by the conclusion, also attacked by the appeal, that "the plaintiff is not entitled to recover for [these] withdrawals because the evidence fails to overcome the prima facie showing made by the bank records of withdrawals." Findings in this form are not usual but are not of the same nature as mere statements of evidence and are not improper for the purpose, above stated, for which we regard them as having been made in this instance. *Sprague* v. *New York & N. E. R. Co.*, 68 Conn. 345, 356, 36 Atl. 791.

The delivery by the bank to the plaintiff of each statement of the latter's account, with the canceled checks upon which the charges against it were based, was a rendition of the account so that retention thereof for an unreasonable time constituted an account stated which is prima facie evidence of the correctness of the account. Such account stated can be opened and impeached upon proof of mistake or fraud, but the plaintiff's silence as to the correctness of the account rendered puts upon it the burden of proving that the account, as stated, was the result of such fraud or mistake. *Shipman* v. *Bank of State of New York*, 126 N. Y. 318, 327, 27 N. E. 371, 373; *Los Angeles Investment Co.* v. *Home Savings Bank*, 180 Cal. 601, 612,

182 Pac. 293; *Jordan Marsh Co.* v. *National Shawmut Bank,* 201 Mass. 397, 411, 87 N. E. 740, 22 L. R. A. (N. S.) 250; *Daytona Bridge Co.* v. *Bond,* 47 Fla. 136, 36 So. 445; *Wurlitzer Co.* v. *Dickinson,* 153 Ill. App. 36; notes, 29 L. R. A. (N. S.) 348, and L. R. A. 1917C, 455; 3 R. C. L. p. 532; 1 R. C. L. p. 214; 7 C. J. p. 638.

The appellant claims, however, that it so sustained this burden as to render inadmissible the findings attacked and to entitle it to have found, instead, that the withdrawals were effected through checks forged by Miss McGroary. As these checks were missing and could not be produced, a finding that they were forged, if made, must rest upon inferences from the other facts found to have been proven, which have been generally stated. The appellant contends that the circumstances and the course of conduct claimed to be indicated thereby are such that the inference must necessarily be drawn therefrom that not only the withdrawals proven to have been made by forged checks produced, but also all the others which corresponded in amount and time to deposits made in Miss McGroary's bank accounts were obtained through checks forged by her.

We feel justified in assuming that this claim was pressed with equal vigor on the trial, but the trial court held, in effect, that in view of all the relevant considerations appearing in the case such an inference was not compelled or justified. In addition to the elements of uncertainty mentioned in the above quotation from the memorandum of decision, possibilities that some of the checks in question had been signed in blank by one of the Spirts and wrongfully filled out, that checks duly signed had been altered as to payee, and that checks had been given Miss McGroary in payment of loans to the plaintiff—other

than one which was found to have been made and to be unpaid—do not appear to have been negatived. On this appeal we may only review and correct these findings as requested if, from the facts found, reasonable men could not differ as to whether the desired inference can properly be drawn; otherwise, the decision rests with the trial court. *Donovan* v. *Connecticut Co.*, 86 Conn. 82, 86, 84 Atl. 288, and cases cited; *Dexter Yarn Co.* v. *American Fabrics Co.*, 102 Conn. 529, 129 Atl. 527; *Collette* v. *Boston & Main Railroad*, 83 N. H. 210, 140 Atl. 176; *Lerette* v. *Director General*, 306 Ill. 348, 137 N. E. 811, 813; 38 Cyc. 1515. Mere possibilities or suppositions will not sustain a legitimate inference of the existence of a fact nor can it be drawn by conjecture only. *Coolidge* v. *Worumbo Mfg. Co.*, 116 Me. 445, 102 Atl. 238; *United States F. & G. Co.* v. *Des Moines National Bank*, 145 Fed. 273; 23 C. J. p. 55. Whatever view we might entertain were the question, as to whether the inference contended for should be drawn, one primarily for us to determine, we cannot say that it is so required that we can hold, as a matter of law, that no course was reasonably open to the trial court other than to draw it and find accordingly.

The production of the checks claimed to have been forged also had an important and apparently vital bearing upon a determination of the special defenses of estoppel. The trial court correctly held that the essential elements of these defenses were the bank's freedom from negligence, negligence of the plaintiff, and prejudice resulting therefrom to the defendant (*Graham* v. *Southington Bank & Trust Co.*, 99 Conn. 494, 507, 121 Atl. 812), and held, further, as to the checks presented in evidence, that inspection of the signatures, and the expert testimony based on comparison with genuine specimens, established that the

defendant was negligent in making payment thereon, and that therefore determination as to whether the plaintiff was negligent in the respects alleged in the special defenses was unnecessary. The conclusions stated as to the care used by the plaintiff concerning the statements and vouchers were immaterial and at most are to be construed as applying only to the checks produced and found to have been forged. Even if the inference were drawn that the other checks also were forged, it would be necessary, on the question of estoppel as to them, to determine whether each of the forgeries was so obvious or otherwise of such a nature that the bank was negligent in honoring it—an inquiry involving an inspection and comparison of signatures similar to that which enabled the court to decide as to the checks offered in evidence.

Also, if it be held that the bank was not negligent, it would become necessary to decide whether the plaintiff itself was negligent. The finding shows that examination of the bank accounts by anyone other than Miss McGroary was limited to an occasional comparison, by one officer of the company, between the checks entered upon the statement and the canceled checks which Miss McGroary allowed to reach him. Even this examination if made before opportunity was afforded for alteration of the statement would have disclosed discrepancies; a like result would have been obtained by comparison, as to number, payee, and amount, of the checks with the stubs, or of the deposits shown on the statements with the pass-book.

A bank may escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments and that it has been free from negligence. *Morgan* v. *United States Mortgage & Trust Co.*, 208 N. Y. 218, 222, 101 N. E. 871, 872;

Brady, Forged & Altered Checks (1925) pp. 18, 19. The rendering by a bank to a depositor of a periodical account, whether by balanced pass-book and paid checks or by the more modern and generally used detailed statement of deposits and withdrawals accompanied by the canceled checks, imposes upon the depositor the obligation of examining the statement and returned checks with reasonable care and promptness and reporting any irregularities found to the bank within a reasonable time. Brady, Forged & Altered Checks, §§ 102, 104. Many cases in which the care with which the examination was conducted has been brought in question are there collected, p. 448 *et seq.*, p. 460 *et seq.* See, also, note 67 A. L. R. 1121. In *Morgan* v. *United States Mortgage & Trust Co., supra,* the plaintiffs claimed to have discharged their duty of examination by comparing the check book and the genuine vouchers which the clerk who committed the forgeries allowed to reach them. As to this the court says (p. 224): "The record before us, however, discloses how incomplete and ineffective this examination was even as against the primitive methods which Hennessey employed to prevent detection of his wrongdoing by suppression and destruction of the forged vouchers and check list. On the other hand, if [the plaintiffs] had examined the check list and pass book, and if necessary compared them with their own books, they would have discovered at once the payment and debit to their account of checks which they had not drawn and the forgeries would have been uncovered. There is no question about that of course. The only question is whether a jury would have been permitted to say that they were free from negligence when they closed their eyes or turned them away from these certain means of detection of their own agent's wrongdoing which were furnished to them for that

very purpose by the bank. I do not think it would have been permitted to so determine. Negligence in this case means the neglect to do those things dictated by ordinary business customs and prudence and fair dealing toward the bank, which if done would have prevented the wrongdoing which resulted from their omission."

"A consideration of the decisions on this point leads to the suggestion that the depositor will secure a degree of protection in examining the bank's statements personally, or in committing that duty to one who has no other connection with the banking affairs of his employer. This statement is based on the fact that in many cases the fraud complained of has been committed by an employee who was practically in complete charge of his employer's dealings with the bank." Brady, Forged & Altered Checks, p. 449.

The only ruling on evidence which is questioned in this court is the exclusion of checks drawn by Miss McGroary upon her bank accounts in which deposits had been made corresponding in date and amount with withdrawals from the plaintiff's deposits. The purpose was to show that the funds so acquired were used for her own purposes. The issue being whether Miss McGroary obtained the sums so deposited through withdrawals from the plaintiff's deposits by forged checks, and no claim being made by the defendant that any funds so deposited were returned by her to the plaintiff, the proffered evidence as to the purposes for which she in fact disbursed the money was immaterial.

Our inability to so correct the finding as to state that the checks not introduced were forged is decisive of the appeal.

There is no error.

In this opinion the other judges concurred.