THE WESTPORT BANK AND TRUST COMPANY *v.* JOHN D. LODGE ET AL.

MACDONALD, BOGDANSKI, SHEA, DRISCOLL and RUBINOW, Js.

Argued February 7—decided April 5, 1973

*Nicholas A. Battaglino,* with whom was *John W. Boyd,* for the appellants (defendants).

*Richard Berkowitz,* with whom, on the brief, was *Arthur E. Balbirer,* for the appellee (plaintiff).

MacDonald, J. This action was brought to recover an overdraft in a checking account maintained in the plaintiff bank by the defendants John D. Lodge and his wife. By way of special defense, the defendants claimed that the overdraft was caused by the plaintiff's negligence in honoring checks bearing the forged signature of Mrs. Lodge and in honoring a forged letter of instructions concerning the mailing of the defendants' bank statements. The forgeries were perpetrated by an employee of the defendants who admittedly had planned the manipulation of the bank statements and checks to defraud the defendants and later pleaded guilty to forgery. From a judgment rendered in favor of the plaintiff bank, the defendants have appealed.

The first two assignments of error relate (1) to the failure of the trial court to find certain subordinate facts claimed to have been admitted or undisputed and (2) to its finding certain subordinate facts without evidence. The few corrections pursued in their brief to which the defendants have shown themselves entitled are incorporated in the following statement of facts found by the court.

During the time involved here, the defendants maintained with the plaintiff, the Westport Bank and Trust Company, hereinafter called the bank, a joint checking account which was used mainly by Mrs. Lodge for the purpose of paying household bills. The defendants employed as a part-time secretary Miss Dorothy Nye who had worked for them for eight years as a trusted employee and whose duties were to pay bills, to take care of the checking account in question and to balance the

bank statements. Mrs. Lodge relied on Miss Nye to reconcile the bank statements and to maintain a true balance in the account.

Prior to January, 1967, all statements concerning the defendants' checking account had been sent to the defendants' home, but on or about January 26, 1967, the bank received a notice on the defendants' personal letterhead bearing the printed heading "Villa Lodge, Westport, Connecticut," purportedly signed by Mrs. Lodge and reading: "Until further notice, please send my statements c/o my secretary, Miss Dorothy Nye, P. O. Box 413, Westport, Conn." The bank had on file a signature card signed by both defendants and, at some point of time not disclosed either by the finding or the printed evidence, the signature on the notice appeared to William Vornkahl, an officer of the bank, to be the same as that of Mrs. Lodge on the card. Vornkahl was not, however, a handwriting expert, and in fact Mrs. Lodge's signature on this notice had been forged by Miss Nye. From January, 1967, through June, 1969, statements of the checking account were sent to the defendants in care of Miss Nye at the post office box directed in the notice. During at least twenty-six months of this period, until March or April, 1969, Mrs. Lodge never contacted the bank or any of its officers, and failed to advise them that she had not received a statement for any particular month, although she had knowledge that the statements were being mailed directly to Miss Nye. The records maintained at the bank regarding checking accounts are available to customers so that those who do not receive statements for any particular month can come to the bank and obtain a copy. During the twenty-six-month period from January, 1967, to March, 1969, despite the fact that some notices of

overdraft were sent to the defendants directly at their home in Westport in addition to those sent to them in care of Miss Nye, Mrs. Lodge at no time attempted to reconcile her bank statements nor did she come to the bank to raise a question or inquire about her account. And during the entire twenty-eight-month period when the statements were being mailed to Miss Nye, Mrs. Lodge never requested the bank to mail them to her home.

From October, 1968, to June 20, 1969, Miss Nye forged Mrs. Lodge's signature on checks made out to the defendants' housekeeper, Mary Leach, and then forged Mary Leach's signature on the back of the checks and cashed them at a local food store. All of this was unknown to the defendants who saw only bank statements, altered as hereinafter described. At the request of Miss Nye, Mrs. Lodge would deposit additional money in the account when Miss Nye advised her that it was overdrawn. Mrs. Lodge admittedly thought something was wrong "off and on" during the twenty-six-month period, but never went to the bank to raise any questions. Although she was shown overdraft statements during this period, she relied solely upon Miss Nye. The account of the defendants had been overdrawn many times previously and, as a courtesy to the Lodges and to save them embarrassment, the bank had permitted overdraft balances to exist. The frequent overdrafts had been continuously and properly covered with additional deposits by Mrs. Lodge until March, 1969, when she complained to Vornkahl and requested his assistance in reconciling her statement. He met with her but the finding does not disclose what transpired at that meeting or whether she brought the statements with her. In any event, the forgeries were not discovered at that time be-

cause the forged checks had been destroyed and the defendants made additional deposits to cover the overdrafts.

In June, 1969, when the overdrafts continued, Mrs. Lodge again complained to the bank and had another meeting with Vornkahl, at which time, with his help, Mrs. Lodge found checks charged to her account which were not shown on her statements and also discovered erasures and missing checks. Vornkahl also noticed erasures and alterations on the statements which Mrs. Lodge brought to him. At this meeting in June, 1969, Mrs. Lodge indicated for the first time that some of the checks previously cashed and paid by the bank were not signed by her.

On July 22, 1969, the bank, expecting to be reimbursed by its insurer, credited the defendants' account in the amount of $4118, but the insurer, in reliance on § 42a-4-406 (2) (b) of the General Statutes[1] reimbursed it only for forgeries occurring before the fourteen-day period of limitations set forth in the statute had expired. On August 8, 1969, the bank debited the defendants' account $3665, the amount for which the insurer had refused to reimburse the bank, thereby recreating the overdraft in the account. On October 10, 1969, the defendants' account was overdrawn in the amount of $3858.42. It was for this amount, together with interest from

---

[1] "[General Statutes] Sec. 42a-4-406. CUSTOMER'S DUTY TO DISCOVER AND REPORT UNAUTHORIZED SIGNATURE OR ALTERATION. (1) When a bank sends to its customer a statement of account accompanied by items paid in good faith in support of the debit entries or holds the statement and items pursuant to a request or instructions of its customer or otherwise in a reasonable manner makes the statement and items available to the customer, the customer must exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item and must notify the bank promptly after discovery thereof. (2) If the bank establishes that the customer failed with respect to

August 8, 1969, the date of demand, that the judgment appealed from was rendered in favor of the plaintiff.

The first issue raised and briefed by the parties, which presents the question whether the overdrafts actually were caused by the bank's paying checks properly drawn by Mrs. Lodge or by its honoring checks bearing her forged signature, requires no elaboration. The trial court found that the overdrafts resulted when the bank debited the account by the amount of the forgeries for which its insurer had refused reimbursement, a finding which is not contested. It is apparent to us, as it was to the trial court, that the forged checks had caused all but a trifling portion of the overdraft.

The second and third issues raised by the defendants are directed to conclusions reached by the trial court and will be discussed together since they raise the related questions (1) whether the defendants are precluded from asserting the forged signatures of Mrs. Lodge against the plaintiff and (2) whether the defendants are liable for honored checks bearing the forged signature of Mrs. Lodge.

It is the position of the plaintiff that the defendants are precluded by §§ 42a-4-406 and 42a-3-406 of the General Statutes (§§ 4-406 and 3-406 of the Uni-

an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank (a) his unauthorized signature or any alteration on the item if the bank also establishes that it suffered a loss by reason of such failure; and (b) an unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration. (3) The preclusion under subsection (2) does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item. . . ."

form Commercial Code) from asserting the forged signatures of Mrs. Lodge as a defense against the plaintiff's claim. Section 42a-4-406, the relevant subsections of which appear in footnote 1, imposes specific duties on a bank and its customers with respect to accounts maintained at the bank and outlines the effects of negligence on the part of either or both of the parties. With regard to the statutory duty imposed upon the defendants by § 42a-4-406 (1) to "exercise reasonable care and promptness to examine the statement and items to discover his unauthorized signature or any alteration on an item," the defendants claim that such duty never arose because the statements and cancelled checks were not made available to them, as required by the statute, during the crucial period when the forgeries and alterations occurred. It is not disputed that copies of the statements and cancelled checks were at all times available to the defendants at the bank. Moreover, it is undisputed that at no time during the twenty-six-month period involved did Mrs. Lodge inquire about her statements although she knew that the statements were being sent to Miss Nye and although some notices of overdrafts during that period were sent to the defendants directly to their home in Westport. We cannot agree with the defendants' contention that the bank was negligent in complying with the forged notice of January 26, 1967, requesting it to mail statements in care of Miss Nye and that such negligence deprived the defendants of the opportunity to examine the forged checks and altered statements. On the contrary, it would appear that it was the defendants' own negligence which deprived them of that opportunity. Although we agree with the defendants' claim that there is nothing in the record

to support the trial court's conclusion that they had failed to exercise due care in their initial hiring of Miss Nye, there is much to indicate that they were negligent in relying so completely on her accuracy and honesty once they became aware of the unexplained overdrafts and the changed procedure for mailing the statements. There is no finding that Mrs. Lodge ever attempted to check Miss Nye's handling of the account or requested to examine the statements or checks during the entire period when they were being mailed to her, despite the fact that Mrs. Lodge was shown overdraft statements and admittedly thought something was wrong "off and on" during the period of more than two years.

The defendants argue that the plaintiff failed to prove that the defendants would have discovered the forgeries even if they had examined their statements, citing the fact that even the plaintiff's officer had difficulty identifying them until his second examination of the statements with Mrs. Lodge. The short answer to that is that the forgeries actually were discovered two months after the first joint examination and there is every reason to believe that they would have been discovered and further difficulties prevented had Mrs. Lodge acted more promptly in checking on suspicious circumstances, exercising some kind of reasonable supervision over her employee's conduct or at least insisting upon a personal examination of the statements and cancelled checks after her suspicions had been aroused.

We conclude that there was sufficient evidence before the court to sustain its conclusion that a reasonably prompt and careful examination of the altered statements would have disclosed the forgeries many months before they ultimately were discovered and that the lack of effort on the part of

the defendants to make such examination constituted negligence. In reaching this conclusion we find support from other jurisdictions. In *Myrick* v. *National Savings & Trust Co.,* 268 A.2d 526, 528 (D.C. App.), the plaintiff had received no statements or cancelled checks for several months and her account was overdrawn as a result of the bank's honoring forged checks. In holding that the record was devoid of any evidence justifying the plaintiff's failure to inquire concerning her lack of receipt of monthly statements, the court stated, quoting the code: "We hold that Miss Myrick was negligent as a matter of law in not making this inquiry of the bank, especially after she had been told that the bank's records show that she had no money in her account. . . . Considering these circumstances, we think her 'negligence substantially contribute[d] . . . to the making of an unauthorized signature [and that she] is precluded from asserting the . . . lack of authority against . . . [the] drawee.' " In *Terry* v. *Puget Sound National Bank,* 80 Wash. 2d 157, 492 P.2d 534, the court, in holding depositors not entitled to recover from the bank moneys paid out of a partnership account by checks forged by a partnership employee, observed, in language peculiarly applicable to the present case, "[t]he monthly statements sent in October, November and December of 1968 were intercepted by . . . [an employee], and not received by plaintiffs. Plaintiffs did not inquire of the bank nor discuss between themselves this unusual absence of statements and cancelled checks. It was only when they received notice in late December that the account was overdrawn that they went to the bank and then discovered the forgeries. These facts constitute substantial evidence of negligence on the part of the plaintiffs.

Plaintiffs suggest that negligence is insufficient to support the affirmative defense afforded by these statutes [The Uniform Commercial Code] in a forgery case, since forgery is a crime involving specific criminal intent. The statutory language contradicts this assertion. Under the statutes, the customer is precluded from asserting his unauthorized signature against the bank when he has failed to exercise reasonable care. Criminal activity is not a measure; negligence substantially contributing to the unauthorized signature is plainly sufficient."

"The Code makes no provision for cases where a depositor entrusts the examination of his bank statement and cancelled checks to the dishonest employee. It follows that a court considering such a question is likely to follow its own prior law." Brady, Bank Checks (4th Ed.) § 15.25 (g). In the absence of prior Connecticut decisions on this precise point, we have found some support for the position we have taken in *General Petroleum Products, Inc.* v. *Merchants Trust Co.*, 115 Conn. 50, 59, 160 A. 296, where this court stated: "A bank may escape liability for repayment of amounts paid out on forged checks by establishing that the depositor has been guilty of negligence which contributed to such payments and that it has been free from negligence." Referring to *Morgan* v. *United States Mortgage & Trust Co.*, 208 N.Y. 218, 224, 101 N.E. 871, the opinion proceeds (p. 61) to quote with approval the following language of the New York court in the *Morgan* case: "Negligence in this case means the neglect to do those things dictated by ordinary business customs and prudence and fair dealing toward the bank, which if done would have prevented the wrongdoing which resulted from their omission." It then quotes the following from Brady, Forged and

Altered Checks, p. 449: "A consideration of the decisions on this point leads to the suggestion that the depositor will secure a degree of protection in examining the bank's statements personally, or in committing that duty to one who has no other connection with the banking affairs of his employer. This statement is based on the fact that in many cases the fraud complained of has been committed by an employee who was practically in complete charge of his employer's dealings with the bank." The application of this language to the facts of the present case is obvious.

Under § 42a-4-406 (3), the preclusion of the customer from asserting certain defenses against the bank "does not apply if the customer establishes lack of ordinary care on the part of the bank in paying the item." This clearly imposes the burden of proof on the defendants to show lack of ordinary care on the part of the bank in complying with the request to mail statements in care of Miss Nye, as well as in honoring the forged checks. This shift in the burden of proof is explained in comment 4 to § 4-406 of the Uniform Commercial Code, § 42a-4-406 of the General Statutes. 20 Connecticut General Statutes, Annotated (West Ed.) comment 4, pp. 111, 112.[2] With respect to the letter of instructions, the claim of the defendants that this notice was simply "accepted at face value" was not supported by evidence. On the contrary, there is an unattacked finding that "[t]he signature in the letter authorizing the change of address appeared to be the same to Mr. William Vornkahl, an officer of the plaintiff

---

[2] "This distribution of the burden of establishing between the customer and the bank provides reasonable equality of treatment and requires each person asserting the negligence to establish such negligence rather than requiring either person to establish that his entire course of conduct constituted ordinary care."

corporation." There is also the fact that Mrs. Lodge knew that the statements were being sent to Miss Nye and yet she took no steps over a twenty-six-month period to rectify the situation. It would therefore appear inequitable to allow her now to assert that the bank was without authority to mail the statements in care of Miss Nye.

By the same token, the defendants were unable to sustain their burden of proving that the bank failed to use ordinary care in honoring the forged checks. They called no handwriting experts; they failed to introduce legible copies of the forged checks, relying instead on an almost illegible copy of one check introduced by the plaintiff; they failed to produce the signature card used by the bank's bookkeeping department when verifying signatures on checks; and they failed to subpoena the original change of address notice, relying instead on a poor copy which was difficult to compare. Furthermore, the defendants' argument that the act of crediting the account constituted an admission of negligence is without merit because that act, without more support, admits nothing. In summary, we find no error in the conclusions reached by the trial court on the evidence presented to the effect that: (1) the defendants, by their conduct in trusting Miss Nye without checking on her activities and in giving her free and complete access to the checks and statements and thereby placing her in a position to make the forged instruments, failed to exercise reasonable care and were negligent; (2) that the plaintiff sent to the defendants statements of account accompanied by items paid in good faith in support of the debit entries, or otherwise in a reasonable manner made such statements and items available to the defendants within the meaning of § 42a-4-406 (1)

of the General Statutes; (3) that the defendants failed to exercise reasonable care and promptness to examine the statements and items to discover the unauthorized signatures and alterations; and (4) that the defendants, by their negligence, substantially contributed to the material alteration of the instruments in question or to the making of the unauthorized signatures and are, therefore, precluded from asserting the alteration or lack of authority against the plaintiff, who paid the forged checks in good faith, under § 42a-3-406 of the General Statutes which provides: "Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business." We previously have expressed our agreement with the trial court's conclusion that the defendants failed to establish as a matter of law that the plaintiff did not use ordinary care in paying any of the items in accordance with § 42a-4-406 (3) and, accordingly, failed to establish that such payments were not made "in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business."

There is no error.

In this opinion the other judges concurred.