Doyle, J.
This is an action in contract in which the plaintiff seeks damages for the defendant’s alleged negligence, breach of contract and violations of G.L.c. 93A arising from the defendant’s payment of two forged checks drawn on the plaintiff-depositor’s account.
The reported evidence discloses that the plaintiff opened a checking account with the defendant-Bank in Peabody, Massachusetts on March 7, 1981. The account was entitled “Kamino Boston.” Said account was opened upon the advice of the plaintiff’s attorney, Allan Ponn, purportedly to facilitate completion of the recent sale of the plaintiff’s business. The plaintiff signed a bank signature card and was the sole signatory to the account.
The plaintiff directed the Bank to mail all account statements to Ponn’s office in Boston. The plaintiff testified that this direction was made at the request of former attorney Ponn, and that Ponn’s control of the account statements was somehow necessary to the payment of outstanding bills from *59 the sale of the plaintiffs business. The report also states that “in the course of Ponn’s handling of the checkbook” the plaintiff requested blank checks from Ponn at various times and that Ponn forwarded checks to the plaintiff for the latter’s use. Thus the plaintiff not only delegated the right to inspect account statements to Ponn, but also permitted Ponn to exercise full control over the bank account at issue.
On August 25, 1981, the plaintiff attempted to cash a check at the defendant-Bank and was informed that the account in question was overdrawn. The plaintiffs subsequent efforts to locate Allan Ponn by telephone and at his office proved futile. The plaintiff thereafter endeavored to obtain copies of the account statements and was informed by the Bank that the statements had been mailed to Allan Ponn’s office in accordance with the plaintiff’s instructions.
Allan Ponn was suspended from the practice of law on February 9,1982 and was later disbarred. The plaintiff testified that he was not notified of Ponn’s suspension and did not become aware of the same until so informed by new counsel on July 9,1983.
Thereafter, by letter of his attorney dated July 18, 1983, the plaintiff contacted the defendant concerning the balance and status of the Kamino Boston account. At a conference held on August 9,1983, the defendant-Bank presented copies of two checks dated April 17,1981 and July 1, 1981 in the respective amounts of $5,000.00 and $500.00. These checks were drawn on the account in question, were made payable to Allan Ponn and bore the signature of William R. Jensen. The plaintiff denied the authenticity of these signatures.
On August 29, 1983, the plaintiff forwarded to the defendant a demand letter pursuant to G.L.c. 93A requesting restitution of the $5,500.00 paid out of the plaintiffs account on the basis of the forged checks. The defendant seasonably replied by advancing a one year, statute of limitations, affirmative defense.
The trial court entered extensive subsidiary findings, in favor of the defendant-Bank which included the following:
In March of 1981, Jensen, who was in the freight. forwarding business, went to the Essex Bank with his personal and corporate attorney to open a checking account under the name of Kamino Boston .. . [B]oth the checkbpok and all bank statements were to be sent to the attorney’s office.... The plaintiffs pleadings concede that the statements were sent to the attorney’s office in compliance with the written authorization.
On April 17, 1981, a check for $5,000.00 was drawn on Jensen’s account against the initial deposit of $7,500.00 and on July 1,1981, a further check was drawn on this account for $500.00, both checks payable to the attorney in whose safekeeping the checkbook was entrusted.
On February 9, 1982, the attorney was temporarily suspended from the practice of law. ... On September 28, 1983, the attorney was disbarred.
Jensen became aware of his attorney’s status relative to the practice of law on July 9,1983. However, after inquiring of the bank on August 25, 1981, he learned that the account was overdrawn in the amount of $10.00. There was no evidence that he brought the forgeries to the attention of the bank until July 9, 1983, two years after the forgeries.
The primary defense presented by Essex is G.L.c. 106, § 4-406 *60 (4);,. . This section must be read in conjunction with G.L.c. 106, .84-406 (1). .. The reasoning behind G.L.c. 106, § 4-406 (4) is that there can be serious consequences in a failure to notify the bank in that it presents the opportunity to the wrongdoer to repeat his misdeeds.
On the fact situation presented, G.L.c. 106, § 4-406 (4) clearly applies as the attention of the bank was not called to the forgeries until well after the one year.
However, in addition to the preclusionary effect of the above subsection of G.L.c. 106, § 4-406, the conduct of Jensen in entrusting the checkbook to his attorney and also directing the statements to be sent to his attorney constitutes negligence on his part....
The well known legal maxim must indeed apply in view of the Uniform Commercial Code in that where one of two innocent parties must suffer from the acts of a third, he who has enabled such third person to occasion the loss must sustain it.
It is clear that there was a breach of fiduciary trust, but that of the attorney to his client. The bank clearly performed in the manner requested by the plaintiff in sending items and bank statements to the attorney.
The statute clearly exculpates the bank from liability on these forgeries.
I find for the defendant, Essex Bank, on all counts.
Judgment was entered for the defendant on May 15,1984. The plaintiff nov seeks review by this Division of the following disposition made by the trial court of plaintiffs requests for rulings numbers 1 through 11:
1. The evidence requires a finding for the plaintiff.
DENIED, no binding evidence as a matter of law to support this request.
2. Upon the law and weight of the material credible evidence introduced, the Court is required in finding that the plaintiff notified the bank promptly and expeditiously upon learning of the forgery. DENIED, see finding of fact.
3. The Court is required ire-finding that the plaintiff isn’t bound to foresee the intervening act of a third party thief.
ALLOWED, as a true statement of law, Graw v. Prudential Trust, 249 Mass. 325, but see findings of fact as to application of G.L.c. 106, § 4-406 (4).
4. The Court is required in finding that the plaintiff isn’t negligent in having his statements and cancelled checks forwarded to his attorney’s office.
DENIED, see finding of fact, Westport Bank & Trust v. Lodge, 164 Conn. 604 (1973).
5. The Court is required in finding that the defendant’s rights haven’t been prejudiced or impaired by the plaintiffs late notifying the said defendant of the forgery, in excess of one year thereof.
DENIED, as a matter of law.
6. The Court is required in finding that the one year statute of limitations to wit, MGLA, Chapter 106, section 4, subsection 4-406 (4), doesn’t take effect or commence to toll until the plaintiff has knowledge of the outstanding fraud.
DENIED, as a misstatement of the prevailing law.
7. The Court is required in finding that the defendant’s refusal to *61 honor the plaintiffs claim is tantamount to bad faith. Whereby, the Court is required to find treble damages for the plaintiff.
DENIED.
8. The Court is required in finding that the defendant was negligent in not recognizing the forged signature of the plaintiff, wherein a finding for the plaintiff is required.
DENIED, calls for a finding of fact not supported by any binding evidence.
9. The Court is required in finding that the negligence or culpability of the attorney isn’t imputed to the client.
ALLOWED, as a true statement of law, but not an issue before the Court.
10. The Court is required in finding that the plaintiff wasn’t negligent or culpable in having his monthly statements mailed to his attorney. DENIED, calls for a finding of fact not supported by any binding evidence.
11. The Court is required [sic] that a finding of treble damages for the plaintiff is in order due to the defendant’s culpability in not restoring the funds that were incorrectly debited from the plaintiffs account on a forged signature.
DENIED, calls for a finding of fact.
1. There was no error in the denial of plaintiffs requests numbers 5 and 6 which set forth misstatements of the commercial law principles dispositive of this case.
General Laws c. 106, § 4-406 (4) states in relevant part:
“Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year from the time the statement and items are made available to the customer (subsection (1) ) discover and report his unauthorized signature or any alteration on the face or back of the item . . .is precluded from asserting against the bank such unauthorized signature.. ..”
Section 4-406 (4) thus accords an unequivocal, one year time period to the bank customer for the detection and reporting of an unauthorized signature. See, generally, Gennone v. Peoples Nat’l. Bk. & Tr. Co., 51 Pa. D & C2d 529, 9 U.C.C. Rep. Serv. 707, 708 (1971). Contrary to the assertions underlying plaintiffs request number 5, the operation of this absolute, one year time restriction is mandated by law and is in no way contingent upon evidence of specific prejudice accruing to a bank by reason of a customer’s delay in reporting forgeries.[1]
“[Sjubsection (4) places an absolute time limit on the right of a customer to make claim for payment of altered or forged paper without regard to care or lack of care of either the customer or the bank. ... Section 4-406 evidences a public policy... in favor of reasonable time limitations on the responsibility of banks for payment of forged or altered items.”
Uniform Commercial Code Comment, § 4-406, para. 5, 7.
Relying on inapposite malpractice and products liability case law, the *62 plaintiff has argued in request number 6 that the G.L.c. 106, § 4-406 (4) one year period does not begin to run until a depositor actually knows or has reason to know of the forged or unauthorized signature. The plaintiffs contention erroneously analogizes this one year period tó a traditional statute of limitations governing the commencement of an action in tort. Section 4-406 (4) does not, however, constitute “a limitation statute fixing the time within which action must be brought. [It] creates a rule of substantive law, a statutory prerequisite of notice. A statute of limitations may be tolled; the bar of a condition precedent to liability may not be lifted.” Billings v. East River Sav. Bk., 307 N.Y.S.2d 606, 607 (1970). See also Stauffer v. Oakwood Deposit Bk., 249 N.E. 2d 848, 852 (1969).
Moreover, the express language of § 4-406 (4) establishes the invalidity of the plaintiffs contention. Section 4-406 (4) states that the one year period in question begins to run “from the time the statement and items are made available to the customer.” These documents are “made available” when they are mailed by the banks to the customer or to another party in accordance with the customer’s instructions. See G.L.c. 106, §4-406 (1); Kiernan v. Union Bank, 55 Cal. App.3d 115, 127 Cal. Reptr. 441, 443 (1976). A bank customer is not, therefore, accorded the luxury of an unlimited period of time in which to detect or become suspicious of forged drafts drawn on his account. No special circumstances or mitigating facts may be pleaded to suspend or delay the automatic and inexorable running of the statutory period. Consistent with his affirmative duty to examine account statements with “reasonable care and promptness,” G.L.c. 106, § 4-406 (1); Huber Glass Co., Inc. v. The First Nat’l. Bk. of Kenosha, 138 N. W. 2d 157, 160 (1965), a bank customer is obligated to discover and to report unauthorized signatures to the bank within a fixed and finite one year period which begins on the date account statements are made available to him. See, generally, Hardex-Stubenville Corp. v. Western Penn. Nat’l. Bk., 285 A.2d 874, 880 (1971).
The report states that the forged drafts in question herein were dated April 17 and July 1,1981. The plaintiffs July 9,1983 notice to the defendant-banks of these forgeries was thus well beyond the one year period prescribed in G.L.c. 106, § 4-406 (4). As the trial justice properly determined, the plaintiff was thus precluded from asserting such unauthorized signatures against the defendant in this action to recover the amount of the forged drafts.Pursuant to § 4-406 (4), the trial court’s finding for the defendant herein was thus required as a matter of law.
2. It is unnecessary to engage in an extensive review of the remainder of the plaintiffs requested rulings for it is evident that the trial justice correctly utilized the dispositive legal principles in properly denying requests 5 and 6 and in entering required findings and a judgment for the defendant. Even a cursory examination of plaintiffs requests numbers 1,2,3,4,7,8,9,10, and 11 indicates that the court’s disposition of these requests was free of error.
Plaintiffs requests 3,4,8,9 and 10, which alleged bad faith and negligence by the bank and due care on the part of the plaintiff, were rendered immaterial by the express terminology of G.L.c. 106, § 4-406 (4). Said statute operates “[w]ithout regard to care or lack of care of either the customer or the bank.”
Requests 7, 8, 10 and 11 impermissably sought findings of fact to which a party is ordinarily not entitled upon simple request in a district court proceeding. Dist./Mun. Cts. R. Civ. P., Rule 52 (a); Ashapa v. Reed, 280 Mass. 514, 516 (1932); Waters & Brown, Inc. v. Boston Better Business Machines Co., 1984 Mass. App. Div. 159, 160. As no evidence binding upon the parties would, *63 as a matter of law, have permitted much less required the entry of these findings, requests 7, 8, 10 and 11 were properly denied by the trial justice. Cifizarri v. D'Annunzio, 1984 Mass. App. Div. 102, 103.
Request number 2 sought a ruling as to the sufficiency of the evidence to support the plaintiffs position on the salient issue in this case; namely, the timeliness of the plaintiffs notice to the defendant of the forgeries perpetrated by Ponn. Such request was properly denied as inconsistent with the court’s valid G.L.c. 106, § 4-406 (4) findings on this issue. Alberti v. Acton Concord Chevrolet Inc., 1983 Mass. App. Div. 95, 97 and cases cited.
Finally, plaintiffs request number 1 erroneously asserted that the totality of the evidence entitled the plaintiff to a finding in his favor as a matter of law. This request could have been denied as lacking the requisite factual specification mandated by Dist./Mun. Cts. R. Civ. P., Rule 64 (b). See, e.g., Wolf v. C. Bain Inc., 1983 Mass. App. Div. 365, 366. The trial court’s denial of plaintiffs request number 1 was also proper on the substantive basis that the evidence permitted a finding in favor of the defendant. Memishian v. Phipps, 311 Mass. 521, 524-525 (1942).
3. There was no error in the trial court’s disposition of plaintiffs requested rulings. Accordingly, the report is dismissed.

 Although a bank is not required to demonstrate prejudice as a condition precedent to the assertion of a § 4-406 (4) one year defense, it is clear that the rationale for the statutory time restriction derives in part from the Code’s recognition that a failure to discover unauthorized signatures and to notify the bank promptly permits the wrongdoer to repeat his forgery. Such repetition clearly results in further harm to the bank and its customer. The instant case is illustrative. If the plaintiff herein had routinely examined his bank statements, he would have discovered Ponn’s forgery of the April 17,1981 draft in sufficient time to prevent the second forgery on July 1,1981.