[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
CT Page 6804
The plaintiff, Greenwoods Scholarship Foundation, Inc., a non-profit corporation, claiming the wrongful diversion of funds from its checking account, brings this action against the defendant Northwest Community Bank in five counts, alleging: a breach of the implied covenant of good faith and fair dealing (count one); a violation of the Connecticut Unfair Trade Practices Act, General Statutes §§ 42-110b, et seq. (CUTPA) (count two); negligence (count three); conversion (count four); and, a violation of the "proper payable" provision of General Statutes § 42a-4-401 (count five). The defendant denied the material allegations of the complaint[1] and interposed special defenses that the plaintiffs claims are barred by the applicable statutes of limitations. The plaintiff filed a reply claiming that the statutes of limitations were tolled by the fraudulent concealment and "continuing course of conduct" doctrines. The defendant moved for summary judgment, claiming that the plaintiff is precluded by General Statutes § 42a-4-406 from asserting unauthorized signatures on its account, and that the plaintiffs other claims are barred by the applicable statutes of limitations. For the reasons that follow the defendant's motion for summary judgment is granted as to counts two, three, four and five, and denied as to count one.
 I.
This case arises out of the alleged embezzlement from plaintiff's checking account by James A. Frink (Frink), the former treasurer of both the plaintiff and the defendant. Frink served as the treasurer of the defendant bank from 1981 until his termination in February 1992. His tenure as the treasurer of the plaintiff began in May, 1986 and ended with his termination by the plaintiff in April, 1995. The plaintiff alleges that Frink used his dual positions with the plaintiff and the defendant to divert funds from its account at the defendant bank. Fink allegedly perpetrated these thefts between 1988 and 1992 by wrongfully issuing checks to improper payees and by purchasing "cashier's checks" with funds from plaintiffs account. He concealed his wrongdoing by preparing and providing false accountings and statements of the plaintiffs bank balances to the plaintiffs board of directors. The plaintiff asserts that its board of directors was unaware that Frink converted any of its money until April, 1995 because Frink fraudulently concealed his CT Page 6805 actions.
The defendant argues that the court must grant its motion for summary judgment because the plaintiff is precluded by General Statutes § 42a-4-406 (f)[2] from asserting that its treasurer's signature on the improper items was unauthorized. It also argues that as each of the plaintiffs additional claims accrued more than three years before this action was commenced on March 14, 1996, they are barred by the applicable statute of limitations.
The plaintiff urges that the statute of limitations should be tolled because the defendant never "made available" to the plaintiff its bank statements pursuant to General Statutes §42a-4-406 (a).[3] In addition, the plaintiff contends that none of its claims are barred because the statute of limitations should be tolled by Frink's fraudulent concealment and/or his continuing course of conduct.
 II.
"Summary judgment" shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Departmentof Social Services v. Saunders, 247 Conn. 686, 696, ___ A.2d ___ (1999), quoting Practice Book § 17-49, formerly § 384. Summary judgment "is appropriate only if a fair and reasonable person could conclude only one way." Miller v. United Technologies Corp., 233 Conn. 732, 751,660 A.2d 810 (1995). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." (Internal quotation marks omitted.) Serrano v.Burns, 248 Conn. 419, 424, ___ A.2d ___ (1999).
"Summary judgment may be granted where the claim is barred by the statute of limitations." Doty v. Mucci, 238 Conn. 800, 806,679 A.2d 945 (1996). "Summary judgment is appropriate on statute of limitation grounds when the material facts concerning the statute of limitations [are] not in dispute. . . ." Burns v.Hartford Hospital, 192 Conn. 451, 452, 472 A.2d 1257 (1984).
 III. A. CT Page 6806
General Statutes § 42a-4-406 (f) provides in pertinent part: "Without regard to care or lack of care of either the customer or the bank, a customer who does not within one year after the statement or items are made available to the customer pursuant to subsection (a) discover and report the customer's unauthorized signature on or any alteration on the item is precluded from asserting against the bank the unauthorized signature or alteration. . . ." The plaintiff argues that the defendant bank did not make available to it its checking account statements pursuant to General Statutes § 42a-4-406, and therefore, the one-year limitations period for notice to the bank has not run. It is undisputed that the plaintiff failed to provide notice to the defendant within the one-year period of any unauthorized account item signed by Frink. I conclude that as Frink acted solely as the plaintiff's agent after his termination by the defendant in February, 1992, the defendant cannot be held liable for Frink's subsequent wrongful acts in concealing his embezzlement while employed by the plaintiff.
In Westport Bank Trust Co. v. Lodge, 164 Conn. 604, 610-12,325 A.2d 222 (1973), a bank customer's employee embezzled money from her employers' bank account through forgeries over a twenty-six month period. The employee obtained control over the employers' account by sending the bank a forged letter on the employers' letterhead instructing the bank to mail bank statements to the employee. See id., 606. Despite the bank's possession of a signature card signed by the employers, the bank proceeded to send banking information to the employee. See id. The employers did not inquire about their account statements during the twenty-six month period the employee received them. See id., 610. The employers argued that the bank statements were not made available to them, and therefore, the employers did not have a duty to "exercise reasonable care and promptness" to examine unauthorized statements under General Statutes §42a-4-406 (a) (formerly § 42a-4-406 (1)). Westport Bank TrustCo. v. Lodge, supra, 610. The Connecticut Supreme Court held that "there is much to indicate that [the employers were] negligent in relying so completely on [the employee's] accuracy and honesty once they became aware of the unexplained overdrafts and the changed procedure for mailing the statements." Id., 611. The Court concluded that the risk of loss to the banking account fell on the employers since they could have discovered the forgeries many months prior to their eventual discovery. See id., 611-12.
In the present case, the plaintiff argues that the one-year CT Page 6807 notice period has not expired because the defendant failed to make available to the plaintiff the bank statements. Unlike the plaintiff in Lodge, the alleged thief in the present case served as the treasurer of the defendant until February 1992, while also treasurer of the plaintiff. In the latter capacity, Frink was authorized to deposit and withdraw funds, sign all checks, keep the plaintiffs books, manage the plaintiffs funds, and maintain custody of the plaintiffs financial records. While this dual capacity presents an important difference between the present case and Lodge, it is clear that the bank statements which were issued to the plaintiff and received by Frink, were "made available" to the plaintiff within the meaning of § 42a-406 (a) and that its own negligent conduct prevented the discovery of Frink's embezzlement within one year.
The plaintiff implies in its memorandum in opposition to the defendant's motion for summary judgment that the defendant may not have disbursed bank statements to the plaintiff at all. The affidavit of the plaintiff's president, Elizabeth Thompson, indicates that this assertion is incorrect. Thompson's affidavit reveals that Frink had the financial records which included the plaintiffs checking account balances. Since Frink acted solely as the treasurer for the plaintiff for at least three years, after his termination from defendant's employ, and was no longer in his prior dual capacity as agent for both parties, the plaintiffs position that the defendant failed to make available to it the relevant account information is not tenable. See Westport Bank Trust Co. v. Lodge, supra, 164 Conn. 610; Knight Communications,Inc. v. Boatmen's National Bank of St. Louis, 805 S.W.2d 199,202-03 (Mo.App. 1991) (holding receipt of bank statements by an authorized party who made unauthorized signatures on checks starts the one-year notification period). Frink was the plaintiffs treasurer, and solely the plaintiffs agent, after his termination by the defendant; thus, his possession and custody of the bank statements "made them available" to the plaintiff.
Moreover, the plaintiff's bank statements prior to Frink's February, 1992 termination by the defendant were also available to Frink and thus also to the plaintiff The plaintiff does not allege that the defendant refused to provide it with any documentation concerning its account. Instead, it relied upon Frink's representations and delayed bringing the present action against the defendant until March 14, 1996, more than four years after the defendant terminated Frink's employment. Article II, § 16, of the plaintiffs by-laws provides that the plaintiff's CT Page 6808 financial records are to be audited annually by at least two members of the board of directors or a certified public accountant. In addition, a number of individuals other than Frink, were responsible for the oversight of the plaintiffs finances. Any of these individuals could have obtained the bank statements at any time from either Frink or the defendant. Accordingly, I conclude that the plaintiff cannot logically assert that fraudulent concealment may be attributed to the defendant to create an issue of fact regarding the defendant's alleged failure to provide account information. Therefore, I find that there is no genuine issue of material fact as to whether account information was made available to the plaintiff under General Statutes § 42a-4-406.[4] It clearly was so available to the plaintiff, even disregarding entirely the period of Frink's dual agency, for more than the one year preclusion period contained in § 42a-4-406 (f), before suit was commenced, thus barring plaintiffs fifth count.
 B.
The defendant contends that even if the defendant failed to make available to the plaintiff its bank statements, the court must nevertheless grant its motion for summary judgment as to counts one through four because the statute of limitations for each of these causes of action has run. The plaintiff claims that each statutory limitations period has been tolled because of Frink's fraudulent concealment and continuous course of conduct. The defendant counters that the fraudulent concealment and continuing course of conduct doctrines do not apply since the defendant terminated Frink more than four years prior to the filing of the present action, and these doctrines are restricted to the conduct of the defendant, not its former employees.
The plaintiff alleges that the defendant breached the implied covenant of good faith and fair dealing (count one), violated CUTPA (count two), committed negligence (count three) and conversion (count four). The latter three causes of action are subject to a three-year statute of limitations. See General Statutes § 42a-110g (f) (providing three-year statute of limitations for violation of CUTPA); General Statutes §52-577 (providing three-year statute of limitations for tort claims). The question of whether the six-year contract statute of limitations applies or the three-year tort statute of limitations applies to an action for breach of the covenant of good faith and fair dealing is an issue that has not been definitively decided CT Page 6809 in Connecticut. See Krondes v. Norwalk Savings Society,53 Conn. App. 102, 133 n. 9, ___ A.2d ___ (1999) (noting that the trial court found that the six-year statute of limitations applies and the plaintiff did not challenge this finding on appeal). But see,City of West Haven v. Commercial Union Ins. Co., 894 F.2d 540,546 (2d Cir. 1990) (holding that three-year general tort statute of limitations applies to an action for breach of duty of good faith and fair dealing).[5] Because the alleged violations occurred prior to Frink's termination by the defendant in February 1992; see Second Amended Complaint, ¶ 8; it is readily apparent that with the exception of the breach of the implied covenant claim, the applicable limitation periods have expired unless there exists evidence that the statute of limitations must be tolled.
Under Connecticut law, "to prove fraudulent concealment, a plaintiff is required to show: (1) a defendant's actual awareness, rather than imputed knowledge, of the facts necessary to establish the plaintiffs cause of action; (2) the defendant's fraudulent concealment of these facts from the plaintiff; and (3) the defendant's concealment of the facts for the purpose of obtaining delay on the plaintiffs part in filing a complaint on their cause of action." Bartone v. Robert L. Day Co.,232 Conn. 527, 532, 656 A.2d 221 (1995).
According to the continuing course of conduct doctrine, the statute of limitations may be tolled if "there is evidence of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to the commencement of the period allowed for bringing an action for such a wrong." Blanchette v. Barrett, 229 Conn. 256, 275,640 A.2d 74 (1994). Connecticut courts have upheld the continued existence of a duty after the cessation of the wrong relied upon for the cause of action when a special relationship between the parties, existed or "some later wrongful conduct of a defendant related to the prior act." Fichera v. Mine Hill Corp.,207 Conn. 204, 210, 541 A.2d 472 (1988). There is no evidence in the record that the defendant committed any wrongful act after its termination of Frink. Generally, there exists no fiduciary relationship merely by virtue of a borrower lender relationship between a bank and its customer. Southbridge Associates v.Garofalo, 53 Conn. App. 11, 18 ___ A.2d (1999). Usually, a bank does not owe its depositors a fiduciary duty. "The fact that a bank is indebted to its account holders for the amount of the funds that they have deposited imposes no special duty of care CT Page 6810 for the safe keeping of the funds on deposit." (citations omitted) Frigon v. Enfield Savings and Loan Ass'n., 195 Conn. 82,87, 486 A.2d 630 (1985). The plaintiff has produced nothing in the record that anything other than the ordinary bank/depositor relationship existed between the parties, or that there was any special reliance by the plaintiff upon the superior knowledge, skill, or expertise of the defendant. Nor has the plaintiff shown that the parties' relationship was characterized "by a unique degree of trust and confidence" which is the hallmark of a fiduciary relationship. See Dunham v. Dunham, 204 Conn. 303, 321,528 A.2d 1123 (1987).
The plaintiff contends that Frink's conduct suffices for application of the fraudulent concealment or the continuing course of conduct doctrine. I conclude that any acts by Frink after his termination from the defendant's employ cannot be attributed to the defendant since these actions can not be deemed actions within the scope or course of his employment.
The plaintiff argues that Frink's wrongful conduct as a fiduciary for the plaintiff until 1995 should toll the statutes of limitations. The plaintiff, however, fails to demonstrate how Frink's conduct should be imputed to the defendant after his termination. It is clear that the plaintiffs theories of fraudulent concealment of continuing course of conduct against the defendant are dependent upon the doctrine of respondeat superior. "The theory of respondeat superior attaches liability to a principal merely because the agent committed a tort while acting within the scope of his employment. It refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though quite improper ones, of carrying out the objectives of the employment."[6]
(Internal quotation marks omitted.) Larsen Chelsea Realty Co. v.Larsen, 232 Conn. 480, 505, 656 A.2d 1009 (1995). The defendant can not be responsible for any of Frink's actions after his termination from the defendant because there is no genuine issue of material fact that his acts were not within the scope or course of his employment. Therefore, neither the fraudulent concealment of the continuing course of conduct doctrine save the plaintiff from the applicable statutes of limitations.
As Frink was terminated in February, 1992, the statute of limitations for the CUTPA, negligence and conversion claims and are therefore barred, would have run by February, 1995. The claim CT Page 6811 of breach of the implied covenant of good faith and fair dealing rests on other allegations in addition to the violation of the "proper payable" provision of § 42a-4-401. Therefore, as it is governed by a six-year limitations period, it is not barred on the record presented.
 Conclusion
For the reasons stated, the defendant's motion for summary judgment is granted as to count two (CUTPA), count three (negligence), count four (conversion) and count five (violation of § 42a-4-401), and denied as to count one (breach of the implied covenant of good faith and fair dealing).
Teller, J.