Whitehead, J.
Plaintiff, Karmin Door Company (“Karmin Door”), brings this action against defendant, BankBoston N.A. (“BankBoston”), for violation of G.L.c. 106, §3-401, violation of G.L.c. 106, §3-404, negligence, breach of contract and violation of G.L.c. 93A, §11. Plaintiff seeks to recover damages sustained when BankBoston honored a number of forged and unsigned instruments drawn on plaintiffs account and totaling approximately $112,403.61.[2] Bank-Boston denies liability and has moved for summary judgment. For the reasons set forth below, the Court allows the motion for summary judgment.
BACKGROUND
The following are the undisputed material facts:
Karmin Door is a garage door sales and installation company located in Salem, Massachusetts. In September of 1996, Karmin Door’s current owner and president, John Swansburg (“Swansburg”), established a corporate checking account with BayBank, a predecessor of BankBoston.
In December of 1996, Kim Mastronardi (“Mastronardi”) was hired to assist in the general office management at Karmin Door. Mastronardi’s responsibilities in that regard included handling bank deposits, processing invoices, preparing checks for vendors and employees, paying bills, doing collections and assisting in the preparation of tax returns. In October of 1997, Swansburg hired Gerard Gillis (“Gillis”) to be the General Manager of Karmin Door. Swansburg was minimally involved in the day-to-day office affairs of the company.
In May of 1998, Karmin Door discovered that Mastronardi had stolen from it a cash payment made by a customer. Mastronardi’s employment was terminated in late May of 1998. As a result of the discovery of the theft, Anthony Aieta (“Aieta”) was hired as General Manager of Karmin Door, and he began reconciling the company’s bank account with Bank-Boston. While doing so, Aieta noticed that the two most recent monthly statements were missing, and he requested from BankBoston copies of the checks paid during those months. After further investigation, Aieta discovered that Mastronardi had forged numerous checks during the period from January of 1997 to May of 1998. In a letter dated August 26, 1998; Karmin Door notified BankBoston of the forged checks. Karmin Door provided BankBoston with notice of further forged checks in a letter dated September 10, 1998. On September 15, 1998, Karmin Door wrote to BankBoston and advised the Bank of the existence of additional forged checks and notified it of typographical errors in the list of forged checks provided on September 10, 1998. In a letter dated September 28, 1998, Karmin Door provided BankBoston with notice of still more forged checks. The bank’s payment on the subject checks constitutes the basis of this action.
DISCUSSION
This court grants summary judgment when there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). If the pleadings, depositions, answers to interrogatories and admissions on file, along with the affidavits, if any, demonstrate that there are no genuine issues of material fact, summary judgment is appropriate. Mass.R.Civ.P. 56(c).
The moving party bears the burden of affirmatively demonstrating that there is no genuine issue of material fact on every relevant issue. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmovmg party has no reasonable expectation of proving an essential element of its case at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact in order to defeat the motion. Pederson, supra at 17.
Counts I & II: G.L.c. 106, §4-406
Karmin Door has alleged in Counts I and n of its complaint that BankBoston violated G.L.c. 106, §§3-401 and 3-404 by honoring unsigned instruments and instruments with unauthorized signatures. Section 3-401 deals with the genuineness and authenticity of signatures and provides that a person is not liable on an instrument unless the person signed the instrument, or unless the instrument was signed by his agent or representative. Section 3-404 pertains to imposters and fictitious payees. The Uniform Com *466 mercial Code Comment to §3-404 refers readers to §4-406 in cases involving forged checks and the rights and responsibilities of the drawee bank. Section 4-406 deals with a customer’s duty to discover and report unauthorized signatures or alterations. Given the fact that, in their memoranda and at oral argument, the parties argued Counts I and II, not in terms of §§3-401 and 3-404,[3] but rather in terms of §4-406, the Court considers Counts I and II as stating claims brought pursuant to §4-406.
BankBoston contends, at the outset, that due to the failure of Karmin Door to examine its statements in a timely fashion and to notify BankBoston of the forgeries, Karmin Door is barred from recovery with respect to all checks negotiated after February 15, 1997.[4] General Laws c. 106, §4-406(1 )[5] imposes upon every bank customer the duty to “exercise reasonable care and promptness to examine the [bank] statement and items to discover his unauthorized signature or any alteration on an item” and to notify the bank promptly upon discovery thereof. See also Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 401 (1909).
Section 4-406(2) reduces the depositor’s ability to compel the bank to recredit his account for payments of instruments bearing unauthorized signature or alterations, by providing:
If the bank establishes that the customer failed with respect to an item to comply with the duties imposed on the customer by subsection (1) the customer is precluded from asserting against the bank
(b) an unauthorized signature ... by the same wrongdoer on any other item paid in good faith by the bank after the first item and statement was available to the customer for a reasonable period not exceeding fourteen calendar days and before the bank receives notification from the customer of any such unauthorized signature or alteration.
However, according to §4-406(3), the preclusion of §4-406(2) does not apply if the customer establishes lack of “ordinary care” on the part of the bank in paying the items.[6]
Thus, to avoid the preclusion of §4-406(2), Karmin Door has the burden to establish lack of “ordinary care” on the part of BankBoston in paying forged and unsigned items. According to the Uniform Commercial Code Comment to §4-406, the concept of “ordinary care,” as defined in §3- 103(a)(7), does not require sight examination by a payor bank if its procedure for paying on checks is reasonable and is commonly followed by other comparable banks in the area. Thus, the commentators have rejected authorities which hold that the failure to use sight examination is negligence as a matter of law.[7]
BankBoston contends that Karmin Door was negligent as a matter of law in failing to examine its bank statements and in failing to supervise or control Mastronardi. Negligence on the part of bank customers and the effect that their negligence has upon a bank’s liability has been discussed in Read v. South Carolina Nat’l Bank, 335 S.E.2d 359 (S.C. 1985), and in Westport Bank and Trust Co. v. Lodge, 164 Conn. 604, 325 A.2d 222 (1973). In Read, an action was brought for negligence and conversion by an account holder to recover monies paid out by a bank as a result of signatures forged by an employee. Evidence was presented to the Court that the dishonest employee was responsible for handling several checking accounts, business and personal, of the company and its partners. Her responsibilities included preparing checks, making deposits and reconciling bank statements. The employee’s work was neither supervised nor verified by any other company employee. The Supreme Court of South Carolina held that the bank was not liable for amounts paid on forged checks because it had exercised ordinary care and because the customer was negligent as a matter of law in allowing the person who had possession of the checkbook to reconcile statements with no supervision, and in failing to designate other individuals to examine the bank statements.
Similarly, in Westport Bank and Trust Co., supra, an action was brought by a bank against its customers to recover overdrafts in their joint checking account. The defendants claimed that the bank was negligent in honoring the forged signature of an employee of the defendants. The employee was a part-time secretary whose duties included paying bills, taking care of the checking account and balancing the bank statements. The employee forged checks over a twenty-six-month period. Although notices of overdraft were sent directly to the defendants, they did not attempt to reconcile their bank statements or contact the bank. They relied solely on their employee. It was not disputed that copies of the statements and canceled checks were at all times available to the defendants at the bank. The Supreme Court of Connecticut held that the defendants, by trusting the employee without checking on her activities and by giving her free access to the checks and statements, thereby placing her in a position to make the forgeries, were negligent in detecting the forgeries. The Court concluded that reasonably prompt and careful examination of statements which had been altered by the employee would have disclosed the forgeries many months before they were actually discovered.
The circumstances in the present case are strikingly similar to those in Read and in Westport Bank and Trust Co., and the analyses by the respective courts in those cases are applicable here. From December of 1996 to May of 1998, Mastronardi handled bank deposits, processed invoices, prepared checks for vendors and employees, paid bills, handled collections and assisted in the preparation of tax returns with little or no supervision. Had another employee of Karmin Door monitored Mastronardi’s activities and *467 examined the statements during this period, he or she would have discovered the forgeries, and Mastronardi would not have had the opportunity to continue to forge checks over a fifteen-month period.[8] Indeed, when another employee finally did reconcile the company’s bank account after Mastronardi’s termination in May of 1998, he very promptly detected the full scope of her wrongdoing.
Moreover, Karmin Door has offered no evidence to satisfy its burden under §4-406(3) that BankBoston failed to provide monthly statements to Karmin Door for inspection in a timely manner or that BankBoston deviated from procedures followed by other comparable banks in the area. Therefore, in accordance with §4-406(2), BankBoston can only be held liable to Karmin Door for the forged checks included in the first statement and any checks negotiated within the next fourteen-day period. In this case, that universe of checks encompasses only one check, which was negotiated on January 15, 1997 and included in the statement dated January 31, 1997. BankBoston is not liable for amounts paid on any forged check negotiated after February 15, 1997.
As to the check negotiated prior to February 15, 1997, §4-406(4) applies. Section 4-406(4) places a time limit of one year on the right of a customer to make claims under §4-406 for payment on altered or forged paper. The subsection provides:
Without regard to care or lack of care of either the customer or the bank a customer who does not within one year from the time the statement and items are made available to the customer . . . discover and report his unauthorized signature or any alteration on the face or back of the item ... is precluded from asserting against the bank such unauthorized signature . . .
The notice requirement of §4-406 was addressed by the Supreme Judicial Court in Jensen v. Essexbank, 396 Mass. 65 (1985). The Supreme Judicial Court held that plaintiffs §4-406 claim against the bank was barred because the customer had not given notice to the bank under §4-406(4) within one year after the bank had furnished the attorney with statements of the account in accordance with the customer’s instructions. In Jensen, the plaintiff opened a checking account at the bank on March 7, 1981 and directed the bank to send all bank statements and blank checks to his attorney. The two forged checks were drawn on the account on April 17, 1981 and July 1, 1981 respectively. The plaintiff failed to notify the bank of the forgeries until J uly 9,1983. The Court held that “the one-year period in §4-406(4) is not a statute of limitations which might not start to run until the plaintiff knew or should have known of his attorney’s treachery, as the plaintiff argues. It is a statutory prerequisite of notice. It does not govern the time within which an action must be commenced but rather governs the time within which a party to a contract is obligated to act. . .” Id at 66. The Court held that the plaintiffs claims in contract and in negligence therefore were time barred.
In the present case, Karmin Door terminated Mastronardi’s employment in May 1998, after discovering that she had stolen company funds. In that same month, the company’s general manager began reconciling the company checkbook, discovered that the last two months of statements were missing and requested copies from the bank. However, Karmin Door failed to notify BankBoston of the forged checks until August 26, 1998. Karmin Door later advised the bank of additional forgeries on September 10, September 15, and September 28, 1998. In accordance with the notice requirement of §4-406(4), Karmin Door is barred from asserting against BankBoston forgeries on any checks negotiated prior to August 26, 1997, one year earlier. Therefore, BankBoston is not liable for the forgery on the first check negotiated by Mastronardi in January of 1997.[9]
Count III: Negligence
In Count III, Karmin Door alleges that BankBoston is liable in common-law negligence for its payment on the checks. However, the Uniform Commercial Code supplants the common law of negligence in cases such as this one. See Arkwright Mutual Insurance Co. v. State Street Bank & Trust Co., 428 Mass. 600 (1998). The Court’s discussion in the previous section of this memorandum is therefore dispositive of any negligence claim.
Count IV: Breach of Contract
In Count IV, Karmin Door contends that Bank-Boston breached its contract by failing to exercise due care in its processing of the subject checks. Again it is the Uniform Commercial Code which defines the rights and obligations of the parties. See Arkwright Mutual Insurance Co., supra. The Court’s previous discussion disposes of the contract claim as well.
Count V: G.L.c. 93A, §11
In Count V of its complaint, Karmin Door alleges that, as a result of BankBoston’s negligence, breach of contract and failure to recredit the account of Karmin Door, BankBoston violated G.L.c. 93A, §11. BankBoston contends that Karmin Door has failed to show that its conduct rose to the “level of rascality” needed to support a claim under c. 93A.[10]
G.L.c. 93A prohibits all unfair or deceptive acts or practices. Barden v. Harpercollins Publishers, Inc., 863 F.Supp. 41, 46 (D.Mass. 1994). To prevail on a c. 93A claim involving a business dispute, the plaintiff must prove that the defendant’s conduct implicates a recognized concept of unfairness, is immoral, unethical, oppressive or unscrupulous, and would cause substantial injury to consumers, competitors or other businessmen. PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975).
*468 The Supreme Judicial Court has repeatedly held that a “mere breach of contract without more” is not a violation of c. 93A. See e.g., Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756, 763 (1989) (in order to show a violation of c. 93A, the plaintiff must show “unfair or deceptive acts or practices” attendant to the breach). Similarly, mere negligence is insufficient to create liability under c. 93A without proof that it resulted in unfairness or deception. Schwartz v. Rose, 418 Mass. 41, 44-45 (1994); Walsh v. Chestnut Hill Bank and Trust Co., 414 Mass. 283, 288 (1993) (not every negligent act is unfair or deceptive and thus unlawful).
In the present case, Karmin Door has presented no evidence of unfairness or deception relative to payment on the checks. Additionally, no evidence was presented that BankBoston knowingly or actively participated in Mastronardi’s wrongful activities or that BankBoston acted unfairly in denying Karmin Door’s demand for reimbursement. Accordingly, BankBoston is entitled to judgment as a matter of law on Count V.
ORDER
For the foregoing reasons, the motion of the defendant BankBoston N.A. for summary judgment is allowed in its entirety.

Karmin Door also asserts claims against defendant Mastronardi for fraud and misappropriation. She is not a party to this summary judgment proceeding.

Karmin Door submitted no evidence that Mastronardi impersonated another to induce the drawer to draw a check, nor was evidence submitted that the instruments were made payable to a fictitious or nonexisting person in violation of §3-404.

BankBoston contends that it can only be hable for forged checks included in the first statement dated January 31, 1997 and any checks negotiated within the next fourteen-day period.

G.L.c. 106, section 4-406 was amended effective May 13, 1998. The earlier version of the section applies to the majority of checks here at issue. Those negotiated after that date are governed by the amended version, whose relevant language is largely the same.

Plaintiffs memorandum incorrectly places the burden upon the bank to make an affirmative showing that it acted in accordance with reasonable commercial standards within the banking business.

The effect of this reading of §4-406 is to require that in a small number of cases where a customer has failed to examine his statements or returned items, and where his failure has led to loss under subsection (2), or subsection (d) of the amended version, a bank should not have to bear that loss solely because it has adopted an automated collection or payment procedure.

Some of the checks were not signed at all and, as Karmin Door itself has argued to the Court, the forgeries were recognizable on sight.

As noted, independent of the issue of Karmin Door’s negligence, the one-year rule would bar claims concerning all checks negotiated before August.26, 1997. Setting aside the one-year rule, BankBoston contends that it would not be hable for forged checks that were used to pay Karmin Door debts. Even if the previous discussion were not dispositive as to all checks, the Court agrees that BankBoston would be entitled to judgment as a matter of law relative to those checks that were drafted for a corporate purpose. Indisputably, they included: ##1309, 1446, 1479, 1522, 1549, 1562, 1901, 1904, 1908, 1945, 1956, 2261, 2697, 2736, 2737, 2879, 2933. In addition, as to checks ##2261, 2697, 2736, 2737, 2879 and 2933, Mastronardi testified at deposition that they were drafted for a corporate purpose. Karmin Door has provided no evidence that the subject checks were for other than corporate purposes. BankBoston having negated with competent evidence Karmin Door's claim that those checks were not drafted for a corporate purpose, Karmin Door may not simply rest on its pleadings and mere assertions to defeat the motion for summary judgment. See LaLonde v. Eissner, 405 Mass. 207, 209 (1989). Since Karmin Door has not set forth specific facts indicating that the subject checks were drafted for other than legitimate business expenses, BankB-oston would be entitled to summary judgment with respect to those checks as well.

It appears that the “rascality standard” has lost some of its appeal in recent years. See Massachusetts Employers Insurance Exchange v. Propac-Mass., Inc., 420 Mass. 39 (1995) (Court rejected the “rascality test" and focused on the nature of the challenged conduct); see also Cambridge Plating Co. v. Napco, Inc. 85 F.3d 752, 769 (1st Cir. 1996).